## EX-PARTE CHARLES D. PRINCE.—HABEAS CORPUS.

1. *Habeas corpus* does not lie to correct mere irregularity of procedure, where there is jurisdiction. There must be illegality or want of jurisdiction.

2. *Habeas corpus* is not a remedy for relief against indictments charging criminal offenses defectively or inartificially, though it seems to be a remedy where an indictment charges as an offence an act which, at the time of its commission, the law did not make criminal. In the former case the detention of the accused is not without jurisdiction, though in the latter it is held to be so on the ground that there is no law punishing the act.

3. Where a statute punishes the larceny of "any money * * * or any banknote," and an indictment charges the larceny of "divers bills, commonly known and denominated as National currency of the United States of America, of divers denomination," giving their denomination and value, the sufficiency of the indictment cannot be inquired into by *habeas corpus*.

4. Greenbacks are "money," and National bank bills are "banknotes," within the meaning of the statute punishing the larceny of any "money * * * or any banknote."

This is a case of original jurisdiction.

The facts of the case are stated in the opinion.

*John S. Beard* and *F. T. Myers* for Petitioner.

I. On *habeas corpus* inquiry may go to whether indictment charges any offense. Church on *Habeas Corpus*, see 245, *et set*, 20 Grattan, 716.

II. The indictment charges no offense, McClellan's Digest, sec. 17, 360, 20 Grattan.

The Attorney-General for the State.

RANEY, C. J.:

The return to the writ of *habeas corpus* shows that the petitioner is held by the sheriff of Leon county to answer an indictment found by the grand jury at the late Spring term of the Circuit Court of that county, charging that the petitioner on the 27th day of March of the present year, in that county, "did feloniously steal, take and carry away divers bills, commonly known and denominated National currency of the United States of America, of divers denominations, .to-wit: one bill of the denomination of twenty dollars, of the value of twenty dollars; two bills .each of the denomination of ten dollars, each of the value of ten dollars; one bill of the denomination of five dollars, of the value of five dollars; a more particular description of which said bills is to the jurors unknown, and which said bills circulated and passed in the said State of Florida as money, and which were then and there the property of one John G. Collins."

The statute under which this indictment is claimed to be found is sec. 17, p. 360, McClellan's Digest, which provides that "whoever commits the crime of larceny by stealing the property of another, any money, goods, or chattels, or any bank note, bond, promissory note, bill of exchange, or other bill, order

or certificate, or any book of account for or concerning money or goods due, or to become due, or to be delivered, or any deed of writing containing a conveyance of land, or any other valuable contract in force, or any writ, process or public record," shall be punished if the value of the property stolen exceeds the value of one hundred dollars, by imprisonment in the State penitentiary, or by fine and imprisonment in the county jail, or, if it does not exceed such value, by imprisonment in the State penitentiary or county jail, or by fine; the section specifying the maximum punishment of either kind.

The ground upon which the petitioner claims a discharge is, that the indictment does not allege "any sufficient offence" under the laws of this State, and it is argued that it "charges no offence."

A primary question involved in this case is, that of the function of the writ of *habeas corpus* where the petitioner is held to answer an indictment, which is the status of this prisoner.

In Corryell's case, 22 Cal., 179, the petitioner was under indictment for altering "a certain record of, and belonging to, the office of the Secretary of State, of said State, the same being an engrossed copy of a bill which was introduced into the Senate of the State," at its session in 1861, describing the same, and alleging it to be "by law a record of, and belonging to, the office of said Secretary of State," and specifying the alteration. The statute of California upon which it was attempted to found the indictment, punished the alteration of

any minute, document, book or other proceeding whatever of or belonging to any public office in the State. There was, however, at the time of the alleged alteration, as decided by the court, no law requiring *engrossed* bills to be transferred to the office of the Secretary of State or kept there, and it was consequently held that the petitioner was not charged with any offence known to the criminal laws of the State, and therefore, that the court had no jurisdiction, as its jurisdiction or power extended only to such matters as the law declared to be criminal, and that the petitioner must for this reason be discharged, the function of the writ being to grant relief where the detention is without jurisdiction; or, in other words, illegal. In *Ex parte* Kearney, 55 Cal., 212, the same doctrine is in effect, approved, though there had been a conviction in that case by an inferior court of limited jurisdiction, and the further feature of the legal necessity that its records should affirmatively show jurisdiction entered into the decision. A municipal ordinance provided that "no person should address to another, or utter in the presence of another, any words having a tendency to create a breach of the peace," and it was held that the ordinance meant that the words must be uttered in the presence of the person whom they intend to provoke to such breach, and the complaint failing to aver that the words alleged to have been uttered were addressed to, or uttered in the presence of, the person of whom they were spoken, the prisoner should be discharged as it affirmatively appeared from

the record that he had been convicted of an act which under the then existing law was not a criminal offence. *In re* Buell, 3 Dillon, 116, the petitioner was arrested in Missouri and proceedings were taken under the act of Congress for remanding him to the District of Columbia for trial under an indictment found there charging him with libel, and he obtained a writ of *habeas corpus* and was ordered to be discharged on the ground that the indictment failed to allege a publication of the libel in that district, but made only such an allegation as could be held to have intended a publication in Michigan, and consequently not an offence against the laws of the United States governing the District of Columbia. It is said in the opinion, by Judge Dillon, that mere technical defects in an indictment should not be regarded, but a district judge who should order the removal of a prisoner when the only probable cause relied on or shown was an indictment, and that indictment failed to show any offence against the laws of the United States, or showed an offence not committed or triable in the district to which the removal is sought, would misconceive his duty and fail to protect the liberty of the citizen.

It is unnecessary to say more of these cases than that they are founded upon the theory that an indictment alleging as a criminal offence that which is not made so by the law obtaining at the time the act was done, confers no jurisdiction to hear and to determine, and that a detention of the person under such circum-

stances may be relieved against by this writ as one without jurisdiction; that if there is no law punishing the act, there can be no jurisdiction to detain or try. 2 Hale's P. C., 144; Bac. Abr., *habeas corpus*, B. 10.

The doctrine upon which these cases must rest is not to be confounded with, nor should the decisions based upon it be permitted to invade or impair another rule, both well established and essential to a due administration of criminal law; which rule is, that this writ is not the proper remedy for relief against defective indictments for acts which are offenses under criminal laws. In Keanrey's case *supra*, it is said in recognition of this distinction: "This is not the case of a complaint inartificially drawn which intimates the existence of the facts necessary to the constitution of the offence, or even of an attempted statement insufficient, but indicating a purpose to declare on essential facts. It is a total failure to allege any cause of action, and however objectionable the conduct imputed to the petitioner, he is no more in the eye of the law charged by the complaint with any crime than if the paper had ascribed to him the most innocent deed."

Though under the above authorities the inquiry upon *habeas corpus* may extend to the question whether the indictment charges any offence known to the law, as this goes to the jurisdiction, and if it be found that it does not charge any, the prisoner may be discharged as imprisoned without color of law; *Ex*

*parte prime*, 1 Barb., 340; the purpose of the writ is not to correct any irregularity of procedure where there is jurisdiction. In *ex parte* Kawalsky, 73 Cal.. 120, it is said that where an indictment has been found which, although subject to attack and overthrow upon demurer, contains enough to show that an offence has been committed of which the court has jurisdiction, the party charged cannot be discharged on writ of *habeas corpus*, but will be remitted to the court in which the indictment is pending for such proceedings as the law may warrant by way of defence, and it was held that the defects, if any, in the indictment under which the petitioner was held were of such a character that they could only be reached in the court where it was pending; and by appeal therefrom. See also *Ex parte* Whitaker, 43 Ala., 323; Parker vs. State, 5 Texas Ct. App., 579; *Ex parte* Harris, 47 Mo., 164; Emanuel and Giles vs. State, 36 Miss., 627; Davis' Case, 122 Mass., 324; Church on *Habeas Corpus*, secs. 246, 251. The writ cannot be used as a substitute for a demurrer, a motion to quash, a writ of error or an appeal or *certiorari*. *Ex parte* McCullough, 35 Cal., 97; *Ex parte* Granice, 51 Cal., 375; O'Malia v. Wentworth, 65 Maine, 129; *Ex. parte* Boland, 11 Texas Ct. App., 159; McLaughlin vs. Etchison, 27 N. W. R., 152 (Indiana Supreme Court, A. D., 1891) ; *Ex parte* Bowen, 25 Fla., 214.

If the indictment before us is one charging an act to

be a criminal offence which is in law not so, the authorities first cited would justify us, if they are to be regarded as correctly announcing the law, in discharging the prisoner. It is clear, however, that nothing of the kind can be affirmed in this indictment. The statute punishes the crime of larceny of any money, goods, or chattels, or bank notes. The indictment charges the larceny of divers bills, commonly known and denominated as National currency, giving their denomination and value. Of course the indictment is not for the larceny of coin; yet, admitting for the purposes of this case that the National bank bills, which are a kind or part of the National currency, are not legal tender, and that the term "money" includes only that which is a legal tender, (See Am. & Eng. Ency. of Law, Vol. 15, "Money,") still the larceny of such bank bills is an offence under the bank note provision of this statute, and the larceny of greenbacks or United States treasury notes, which are a legal tender, (Legal Tender Cases, 110 U. S., 421, and cases cited,) is an offence under its "money" provision. Whether the indictment sufficiently charges the larceny of either greenbacks or National bank bills, so as to stand the test of a demurrer or motion to quash is a question with which we have nothing to do in this proceeding, and have not given our attention, but it is certainly indisputable that the language of the indictment is broad enough to cover and does include both

greenbacks and National bank bills, and that both are the subject of larceny in this State.

There is nothing in the case of Leftwitch vs. Commonwealth, 20 Gratt., 716, inconsistent with the above conclusions. It was not a *habeas corpus* proceeding, but a writ of error. The description of what was alleged to have been obtained by false pretense, the statute making this offence larceny, was "the sum of ninety dollars in United States currency," giving its value and stating whose property it was. The indictment was demurred to as not containing a sufficient description of the property so obtained or stolen, the words "United States currency" being merely *nomen generalissimum*. The court held (A. D., 1870) that United States currency might be gold, or silver, or treasury notes, or bank notes, (see Hamilton vs. State, 60 Ind., 193, A. D., 1877,) and that either of these subjects would be consistent with the indictment, and that the indictment should show what kind of currency was obtained, and that it was too vague.

We have not felt it to be our duty to trace the legislation of Congress authorizing the issue of silver and gold certificates, and define their status under the above statute of this State.

The prisoner should be remanded, and it will be so ordered.