# The State *v.* Harrub.
# The State *v.* Melvin.

*Appeals form Discharge on Habeas Corpus.*

1. *State's proprietary rights in and to oyster-beds and oysters.*—The State of Alabama owns the absolute property in the oyster-beds and oysters in her navigable waters, holding it in trust for the use and benefit of her people, subject only to the paramount right of navigation; and in the exercise of her property rights, she may, by legislative enactment, grant or give away the right to take oysters, restricting the grant to her own citizens, and qualifying the exercise of it by them by limitations as to time and manner of taking, selling, or transporting, until the oysters have become an article of inter-state commerce, and as such subject to the laws of the United States.

2. *Same; when oysters become articles of inter-state commerce.*—Oysters taken from the beds within the limits of Alabama, by the persons to whom the qualified right is granted by legislative enactment, do not become articles of inter-state commerce until they have been shelled, and their transportation into another State has been begun.

3. *Constitutionality of law "regulating the planting and taking of oysters in the waters of this State."*—The statute approved February

[The State v. Harrub; The State v. Melvin.]

18th, 1891, entitled "An act to regulate the planting and taking of oysters in the waters of this State" (Sess. Acts 1890-91, pp. 1072-84), is not an unlawful attempt to regulate inter-state commerce ; nor is it violative of the constitutional provision which requires that each law shall "contain but one subject, which shall be clearly expressed in its title," each of the provisions contained in it being cognate and referable to the subject expressed in the title.

FROM the City Court of Mobile.
Tried before the Hon. O. J. SEMMES.

The opinion states all the facts of the case.

WM. L. MARTIN, Attorney-General, for the State, with whom was GAYLORD B. CLARK, filed a printed brief and argument, from which the following extracts are taken :— The title of the State to the oyster-beds within its jurisdiction has not its source in private concession, nor in legislative declaration. It dates from the birth of the State, and rests upon its sovereignty. Prior to the Revolution, the dominion and property in navigable waters, and the lands under them, were held to belong to the European nation by which the particular portion of the county was first discovered. When the Revolution took place, the people of each State became themselves sovereign, and in that character held the absolute right to all navigable waters, and soils under them, for their own common use ; and these rights the States still possess, subject only to the paramount right of navigation, the regulation of which, with respect to foreign and inter-state commerce, has been granted to the United States. There has been no such grant of power over the fisheries. These remain under exclusive control of the State, which may pass such laws as may be deemed expedient to secure to its own citizens the enjoyment of their common property.—*New Orleans v. United States*, 35 U. S., 10 Pet. 662 ; *Martin v. Waddell*, 41 U. S. 16 Pet. 367 ; *Pollard v. Hogan*, 44 U. S., 3 How. 212 ; *Den v. Jersey Company*, 56 U. S., 15 How. 426 ; *Smith v. Maryland*, 59 U. S., 18 How. 71 ; *McCready v. Virginia* 94 U. S. 391 ; *Manchester v. Massachusetts*, 139 U. S. 240 ; *Hooker v. Cummings*, 20 Johns. (N. Y.) 90, 11 Am. Dec. 249 ; *Corfield v. Coryell*, 4 Wash. C. C. 371 ; *Smith v. Levinus*, 8 N. Y. 472 ; *Dunham v. Lamphere*, 3 Gray, (Mass.) 268 ; *Moulton v. Libbey*, 37 Me. 472, 59 Am. Dec. 57 ; *Commonwealth v. Bailey*, 13 Allen, (Mass.) 541 ; *Haney v. Compton*, 36 N. J. L. 507 ; *Hess v. Muir*, 65 Md. 586, 3 Cent. Rep. 891 ; *Huntington v. Lowndes*, 40 Fed. Rep. 625 ; Gould on Waters, 2 ed.,

12

§§ 32, 36, 38, 189; *Tinicum Fishing Co. v. Carter*, 31 Pa. St. 21, 100 Am. Dec. 597.

The foregoing authorities establish beyond all question the truth of the following propositions, subject only to the paramount right of navagation in the United States: (1.) The State owns the beds of all tide-waters within its jurisdiction. (2.) The State owns the tide-waters themselves, and the oysters in them. (3.) This ownership is that of the people of the State as tenants in common. (4.) Nonresidents of the State have no right to, or interest in this property. In short, the people of Alabama are the sole and absolute owners of the oysters in question, with a right of dominion and control as full, complete and perfect as that which Blackstone ascribes to every freeman with respect to his own property. Acting through their legislature, they may appropriate this property to their own exclusive use and enjoyment, or share it with their neighbors, just as the individual citizen may do with that which is his own; they may deny its use to themselves and to all others, for a period of time or for all time; direct whether and to what extent it shall be marketed, select the market and the means of transportation thereto; determine the time, manner and extent when and whereby their title shall be divested, as fully and effectually as could be done by individual volition and contract as to private property. Whatever and however the individual may do with his own property, the community may likewise do with their own. The individual may prescribe the terms and conditions on which he will part with the title to his property, if at all; he may at his option dispose of the entire interest or a qualified title, prefer an inland or a foreign market, hold his property within State limits or place it in the channel of inter-state trade, as he may see fit; and so long as he retains the title, it is under his lawful control. The holder of a qualified interest is bound by the qualifications and restrictions which accompany it. The stream can not rise above its source. A party taking oysters from the beds of the State, takes them with all the qualifications and restrictions imposed by law.

The State may forbid all such acts as would render the public right less valuable.—*Smith v. Maryland, supra*. The unrestricted shipping from the State of oysters in the shell would defeat the utilization of the shells in the propagation of oysters, and thereby render the public right less valuable.—Sec. 5, Vol. 2, U. S. Com. of Fish & Fisheries, p. 564.

If, in any view, the prohibition against shipping oysters in the shell out of the State can be held to affect inter-state

[The State v. Harrub; The State v. Melvin.]

commerce, it will not be considered as an exercise of that power, but as flowing from the acknowledged power of the State to regulate and control the subject.—See *County of Mobile v. Kimball*, 102 U. S. 691; *Kidd v. Pearson*, 128 U. S. 1; *Escambia Co. v. Chicago*, 107 U. S. 678; *Transportation Co. v. Parkersburg*, 107 U. S. 691; *Morgan Steamship Co. v. Louisiana Board of Health*, 118 U. S. 455; *Smith v. Alabama*, 124 U. S. 465; *Nashville & Chattanooga R. R. v. Alabama*, 128 U. S. 96; *Kimmish v. Ball*, 129 U. S. 217.

The fact that the oyster when caught, culled, inspected, and the tax paid, becomes an article of commerce within the State of Alabama, does not constitute it an article of inter-state commerce; and until it becomes such, it remains a part of the general mass of property of the State,. and subject to the control exclusively of the legislative power of the State.—*Coe v. Errol*, 116 U. S. 517.

The act is not obnoxious to that clause of the Constitution which declares that "each law shall contain but one subject, which shall be clearly expressed in its title."—*Ballentyne v. Wickersham*, 75 Ala. 533.

Greg. L. & H. T. Smith, with whom was M. D. Wickersham, for the defendants.—(1.) The principal question presented is, whether the State of Alabama, while making oysters in the shell an article of commerce in the State, can restrict and forbid their use as an article of inter-state commerce. It is conceded that the oyster-beds in the Bay, and oysters while in the bed, are the property of the State, held by it in trust for the citizens of the State; and that the State can grant the right to take oysters from the beds upon such terms and conditions as it may choose to prescribe, provided such terms and conditions do not violate or conflict with a paramount law. It is well settled, also, that the State may regulate the seasons and the manner of catching oysters, restrict the right to take them from the beds to the citizens of Alabama, and make other similar regulations. The cases cited for the State sustain these propositions, but they go no further. Can the State place burdens or restrictions upon inter-state commerce, in a commodity which is an article of commerce within its boundaries? It certainly can not, without permission from Congress, restrict, burden, or prevent the importation from other States, into its boundaries, of any articles of commerce, nor place limitations or burdens on their importations.—*Leisy v. Hardin*, 135 U. S. 109; *Tiernan v. Rinker*, 102 U. S. 125; *Telegraph Co. v. Texas*, 105 U. S. 460;

[The State v. Harrub; The State v. Melvin.]

*McCall v. California*, 136 U. S. 105; *Brimmer v. Rebman*, 138 U. S. 78. Is there any difference, in principle, between the importation and the exportation of an article of commerce? If interference with importations, by prohibitions, restrictions, or burdens, be a regulation of commerce forbidden to the State, is not the prohibition, restriction, or imposition of burdens on the exportation of similar articles, equally within the constitutional inhibition? The exclusive regulation of commerce was vested in the United States for the purpose of preventing the several States from discriminating, in favor of their own citizens and products, against the citizens and products of other States.—*Mobile v. Kimball*, 102 U. S. 697. This discrimination may be accomplished by prohibiting exports to other States, as well as by prohibiting imports from them. Commerce consists in "transportation, purchase, sale and exchange of commodities."—*Leisy v. Hardin*, 135 U. S. 109; *McCall v. California*, 136 U. S. 109. The Alabama statute makes the oyster, not only an article of State commerce, but also of inter-state commerce.—*Lord's Case*, 102 U. S. 541. "Whenever an article has begun as to move a commodity of trade from one State to another, commerce in that article has commenced."—*Daniel Ball*, 10 Wall 565; *Kidd v. Pearson*, 128 U. S. 1. The direct question here involved has been considered and decided in *Territory v. Evans*, 23 Pac. Pep. 115; *McBride v. Reitz*, 19 Kans.; 22 N. Ed. 778.

(2.) The statute is unconstitutional, because it relates to at least four different subjects, only two of which are expressed in the title.

COLEMAN, J.—The defendants were arrested for a violation of the act of February 18th, 1891, pp. 1072-1084, entitled, "An act to regulate the planting and taking of oysters in the waters of this State." Upon *habeas corpus* proceedings the defendants were discharged, the court holding that the act of the legislature was unconstitutional and void, as contravening the third sub-division of the eighth section of Article I of the Constitution of the United States, which provides, that Congress shall have power "to regulate commerce with foreign nations, and among the several States, and with the Indian Tribes."

Sections 1 and 2 of the act of the legislature under consideration read as follows: SECTION 1. "That the title to and property in all oysters in the waters of this State, whether upon public reefs or in so called private beds, or whether the same be transplanted by riparian proprietors

under authority of law or otherwise, or whether the same be a growth from natural deposit, is, and shall remain in the State, until such title shall be divested in manner and form as herein authorized or provided." SECTION 2. "That a license is hereby given to resident citizens of the State of Alabama to catch and take oysters, the property of the State, from the public reefs, or from private beds planted and owned by them, or in which they have secured an interest, or permission from the proprietor thereof to take such oysters, upon the terms and conditions, and subject to the restrictions and regulations hereinafter set forth and enacted ; but no person or persons not a resident of the State of Alabama is or shall be authorized to take or transport any such oysters from, in or through any of the waters of the State of Alabama ; and it is unlawful for any person, whether a citizen of the State of Alabama or of any other State or country, to ship beyond the limits of this State any oysters taken from the waters of this State while the same are in the shells ; *Provided,* that between the middle of December and the middle of January, oysters in the shells may be shipped in barrels by railroad to other States ; *and provided further,* that such oysters in the shell may be shipped *bona fide* from any point in the State of Alabama to any other point in said State, by the lines of transportation which lie partly within and partly without the State of Alabama ; *and provided further,* that any resident citizen of the State of Alabama who shall lawfully take any oysters from the tide-waters of this State, as in this act authorized, shall have a qualified interest or property in the oysters so lawfully taken while in the shell, which he may sell and transfer to any other person within the limits of the State of Alabama; and after said oysters have been shelled within the State of Alabama, such lawful taker or his assigns, as the case may be, shall be vested with all of the State's property and title in and to said oysters, and shall have the right to sell such oysters and shells, or ship the same beyond the limits of this State, without restriction or reservation ; *Provided further,* that in case of any infringement of the foregoing qualified interest in said taker of oysters, said taker may, in his own name, maintain an action against the wrong-doer, either in case or trover as may be proper ; and in case of larceny, or other public offense concerning such oysters, while in the hands of a lawful taker, the ownership thereof shall be averred in such taker or possessor, when by law it shall be necessary to aver ownership."

We deem it unnecessary to set out the whole act.

The principles of law applicable to the facts of the cases before us do not call for a discussion or adjudication of that clause of section 2 which relates to the shipment of oysters in the barrel by railroad, from the middle of December to the middle of January, or that clause which permits transportation by lines which lie partly without the State. *Jones v. Black*, 48 Ala. 540. The agreed facts are, that the oysters were taken and shipped in the shell beyond the limits of the State, by the defendants, in the month of September, in sailing vessels ; that Harrub was a citizen of Alabama, and Melvin a citizen of the State of Mississippi ; and that both were guilty of a violation of the statute. The question involved is as to the constitutionality of the act.

The first question we will consider is as to the extent of the ownership and control of the State of Alabama in and over the oyster-beds and oysters within her territorial limits.

In the case of *Martin v. Lessee of Waddell*, 16 Peters, 411, Chief-Justice Taney declares, as a general principle, "When the Revolution took place, the people of each State became themselves sovereign; and in that character hold the absolute right to all their navigable waters, and the soils under them, for their own common use, subject only to the rights since surrendered by the Constitution to the General Government."

In the case of *Smith v. Maryland*, 18 How. (U. S.) 71, the question was as to the constitutionality of an act of the State of Maryland, which was entitled an "Act to prevent the destruction of oysters in the waters of this State." The court laid down this principle : "But this soil is held by the State not only subject to, but in some sense in trust for, the enjoyment of certain public rights, among which is the common liberty of taking fish, as well shell-fish as floating fish. The State holds the propriety of this soil for the conservation of the public rights of fishery thereon, and may regulate the modes of that enjoyment, so as to prevent the destruction of the fishery. In other words, it may forbid all such acts as would render the public right less valuable, or destroy it altogether. This power results from the ownership of the soil, from the legislative jurisdiction of the State over it, and from its duty to preserve unimpaired those public uses for which the soil is held."

In the case of *McCready v. Virginia*, 94 U. S. 391, the foregoing principles were re-affirmed, and the court went further and declared : "The title thus held is subject to the paramount right of navigation, the regulation of which, in respect to foreign and inter-state commerce, has been

granted to the United States. There has been, however, no such grant of power over the fisheries. These remain under the exclusive control of the State, which consequently has the right, in its discretion, to appropriate its tide-waters and their beds to be used by its people as a common for taking and cultivating fish, so far as may be done without obstructing navigation. Such an appropriation is, in effect, nothing more than regulation of the use by the people of their common property. . . It is in fact a property right, and not a mere privilege or immunity of citizenship. . . . It does not belong of right to the citizens of all free governments, but only to the citizens of Virginia. They, and they alone, owned the property to be used, and they alone had the power to dispose of it as they saw fit. . . . The State may by appropriate legislation confine the use of the whole to its own people alone."

In the case of *Haney v. Compton*, 36 N. J. Law, 522, it was said: "But it can not with any propriety be said, that a statute which simply prohibits non-residents on board a vessel from subverting the soil of the State, and carrying away her property, or that of her grantees, leaving such vessel to pass and repass, and go whithersoever those in charge of her may desire, is a regulation of commerce with foreign nations or among the States. It is a law for the protection of property—at most, an internal police regulation, entirely within the competency of the State to adopt; and it is not perceived that it can by possibility interfere with commerce in the sense in which that word is used in the Federal Constitution."

In *Manchester v. Massachusetts*, 139 U. S. 259, the court reaffirmed the principle declared in the case of *McCready v. Virginia, supra;* and the same principle is announced in *Dunham v. Lamphere*, 3 Gray, 268.

We think it clearly established, that the people of Alabama own absolutely the oyster-beds and oysters in question, and that it is a property right, as complete and perfect as that held to any other property. As was said by Chief-Justice Waite in *McCready v. Virginia*, 94 U. S., *supra*, "the principle is not different from the planting of corn upon dry land." We think it further settled, that the people of Alabama, through its legislature, alone have the power to dispose of their property rights in their oyster-beds and oysters; and if they see proper, may dispose of them to their own people only. It is further settled, that the legislature has ample authority to adopt all precautions and regulations deemed desirable or

necessary for the preservation and increased production of its fisheries.

That the power of Congress to regulate commerce with foreign nations, among the several States, and with the Indian tribes, is unlimited and exclusive of the power of the State, is settled law. Any statute of a State not authorized by Congress, which in any way obstructs or interrupts free navigation, or restricts or burdens any commodity which is an article of inter-state commerce, must be declared null and void.—*Tiernan v. Rinker*, 102 U. S. 125; *Tel. v. Texas*, 105 U. S. 460; *Brimmer v. Rebman*, 138 U. S. 78; *Leisy v. Hardin*, 135 U. S. 109.

To constitute commerce, there must be traffic and inter-course, and to constitute inter-state commerce, there must be traffic and inter-state intercourse—an "intermingling" between different States.  As Mr. Chief-Justice Marshall says in the case of *Gibbons v. Ogden*, 9 Wheaton, 1, "Comprehensive as the word '*among*' is, it may very properly be restricted to that commerce which concerns more States than one. . . The completely internal commerce of a State may be considered as reserved to the State itself." We understand this great case to distinctly recognize the absolute power and control of tne State upon subjects within its territorial jurisdiction which are not articles of foreign or inter-state commerce.

The case of *Coe v. Errol*, 116 U. S. 517, decides an important principle as to the right of the State to tax *its products*, although the owner may intend them for exportation, and although they may be in process of preparation for exportation at the time of the assessment of the tax; but the case is important in the present connection in determining that "there must be a time when they [the products] ceased to be governed exclusively by the domestic law, and began to be governed and protected by the national law of commercial legislation;" quoting from the case of *The Daniel Ball*, 10 Wall. 565, as follows: "Whenever a commodity has begun to move as an article of trade from one State to another, commerce in that commodity between the States has commenced."  But that movement, says the court, "does not begin until the article has been shipped or started for transportation from one State to another." Carrying it from the farm or forest to the depot is only an interior movement of the property, and although it may be for the purpose of exportation, this is no part of the exportation itself.

If the statute of Alabama under consideration militates

[The State v. Harrub; The State v. Melvin.]

against any of these well established principles, in regard to inter-state commerce, it must yield to the dominant supremacy of the Federal Constitution. We do not understand the power vested in Congress to regulate inter-state commerce gives it power over domestic commerce, or authorizes it to regulate the commerce between the citizens of the same State, or different parts of the same State. This power belongs to the several States, and is exclusive of the power of Congress. If the State of Alabama should attempt by legislation to tax or burden or restrict the shipment of oysters from the State of Mississippi or other States, such legislation would be unconstitutional; or, if the State of Alabama should attempt to impose similar or other conditions upon the shipment of any articles of inter-state commerce from this State to another State, that would be an interference with the law of inter-state commerce, which power alone is vested in Congress. To constitute inter-state commerce, however, as we have said, there must be an article or commodity the subject of commerce and destined to pass from one State to another.

These authorities do not militate against, but recognize the power of the State to confine the use of the oyster to its own citizens, and to regulate its shipment and disposition within its borders for their use. This would be domestic commerce, as distinguished from inter-state commerce. Neither do we understand the power of Congress to regulate inter-state commerce in any way interferes with or restricts the right of the State to prohibit its own property, to which it has an exclusive title, from becoming an article or commodity of inter-state commerce.

In the same line may be cited the case of *Amer. Expr. Co. v. People*, 24 N. E. Rep. 758. The statute of Illinois for the protection of game permitted the killing of game-birds for two months in the year. The statute forbade the sale of the game-birds at any time, and made it unlawful, under a penalty, for any carrier or corporation knowingly to receive and transport or convey them beyond the State for sale. Under the act, at the proper time, a person was permitted to kill game for his own use, but not to go upon the market as an article of commerce. The constitutionality of the act was upheld, the court declaring, "the ownership was in the people of the State. This being so, it necessarily follows that the legislature had the right to permit persons to kill or take game upon such terms and conditions as its wisdom might dictate, and that the person killing game might have such property interest in it, and such only, as

the legislature might confer. The legislature never conferred an absolute property in quail upon the person who might kill the same." It was held that the discretion of the legislature in making rules and regulations for the preservation and protection of the game-birds was not subject to judicial control.

The property rights of the oysters being in the State exclusively, and the legislature having full authority to prohibit it from becoming an article of inter-state commerce, and to reserve the oysters for the sole use of its own citizens, and to regulate the sale between its own citizens and between different parts of the State; the question arises, when does the oyster, under the statute, become an article of inter-state commerce, and what provision of the statute attempts to burden, restrict or control it after it has this character. The first section explicitly declares, that "the title and property in all oysters in the waters of this State . . shall be divested in manner and form as herein authorized and provided." That this is a valid enactment, under the principles of law declared in many of the foregoing decisions, can not be questioned. The second section gives a license to resident citizens to catch and take oysters the property of the State, and further enacts that "no person or persons, not a resident of the State of Alabama, is or shall be authorized to take or transport any such oysters from, in or through any of the waters of the State of Alabama; and it is unlawful for any person, whether a citizen of the State of Alabama, or of any other State or country, to ship beyond the limits of this State any oysters taken from the waters of his State while the same are in the shells; *provided* that, between the middle of December and the middle of January, oysters in the shell may be shipped in barrels by railroad to other States," &c. That the State has the right to license its own citizens to catch and take oysters, and to deny to citizens of another State the right to take and transport them, and absolutely to prohibit the shipment of oysters beyond the limits of the State, and to regulate the sale of them within its own limits, not imposing any conditions or burdens or restrictions upon the oyster as a commodity after it has entered another State, or after it may be legally delivered in this State for exportation to a common carrier, or ways by which inter-state commerce is effected, we think is clearly established by the following authorities: 36 N. J. Law, *supra; The Daniel Ball*, 10 Wall. 557; *Coe v. Errol*, 116 U. S. 517; *Gibbons v. Ogden*, 9 Wheat. 1; *McCready v. Virginia*, 94 U. S.

*supra ; Kidd v. Pearson,* 128 U. S. 1; 24 Fed. Rep. *supra ; Phil. & R. R. R. v. Pa.,* 15 Wall. 250-2.

If the State has the power to prohibit the exportation of its oysters absolutely, *a fortiori,* it may limit the shipment of such oysters to such as may have been shelled. If the legislature sees proper, as a means to prevent the exhaustion of its oyster-beds, to grant to the takers, who can only be resident citizens of the State, or their grantees within the State, such a qualified property right in the oyster as will permit its exportation only after it is shelled, where is the authority to judicially control this discretion, or what principle of the inter-state commerce law is violated by such an enactment? The oyster is the absolute property of the State. The State certainly has the power to prevent its becoming an article of inter-state commerce. Until it becomes an article of inter-state commerce, Congress has no authority or control in the premises. The State, by the statute itself, expressly retains the title to the oysters, and prohibits their shipment beyond the State until shelled. Only after it is shelled does the State relinquish its title, and the grantee previously having but a qualified interest, becomes the absolute owner, and the oyster may then become an article of inter-state commerce. When shelled, and the State has parted with its property rights, the State no longer interferes with the article. The owner ships it wherever he pleases, and by whatsoever transportation he prefers.

The statute no where interferes with or obstructs the sailing of the vessels. They can come and go when and whithersoever those in control see proper; but this did not authorize them to subvert the soil of Alabama, and to transport in September oysters in the shells from the reefs of Alabama to other States. The statute expressly prohibited it.

The vice in the argument of the defendant's counsel is in assuming that the oyster in the shell was an article of commerce, when in fact the taker, who could only be a citizen of the State, as we have seen, had but a qualified interest in the oyster, and which he could dispose of only in the State. It would be unsound reasoning to hold that the State could prohibit absolutely the taking of its oysters, or confine the use of them exclusively to its own citizens, and yet could not prevent the taker from shipping them beyond the limits of the State. If the statute had undertaken to invest the taker, or his grantee, with a full and absolute property right and title to the oyster in the shell, so as to

invest him with the power to convert it into an article of commerce, and had then undertaken to prevent its shipment, or burden its shipment with a tax, a different question might arise. That is not the case here. The State carefully guards against this condition, and it is only after being shelled can it be said that the oyster has become an article of inter-state commerce.

These conclusions are fully sustained by the reasonings and principles declared in the case of *Kidd v. Pearson*, 128 U. S., *supra*, in which Mr. Justice Lamar discusses at length and with great clearness the doctrine of inter-state commerce, and the application of the principles stated in *Gibbons v. Ogden*, 9 Wheaton, 1, and *Coe v. Errol*, 116 U. S. *supra*, and other cases cited above.

The policy of the legislature in making provision to keep the shells within the State might be based upon many considerations. However, this court is not called upon to adjudicate upon the policy of the legislature, and we will not consider this view further than to make the following citations from section 5, volume 2, U. S. Commission of Fish and Fisheries, 564: "Besides being useful for making roads, streets, filling wharves and lowlands, and making lime, the shells are of great utility as stools for new oyster-beds, as experiments beginning fifty years ago have demonstrated. . . . These and other minor utilizations are disappearing, however, along the northern coast, through the increased value of the shells to spread on the bottom for the foundation of new colonies, as has been explained; and before long, no doubt, nearly all the shells accumulated will be saved by planters for this purpose, as a better economy than to sell them."

When tested by the rule declared in *Ballentyne v. Wickersham*, 75 Ala. 533, the statute is not obnoxious to the objection that it contains subjects not clearly expressed in the title. The rule, as there held, is, that it is "sufficient if they [the subjects] are all referable and cognate to the subject expressed" in the title.

Our conclusion is, that the act is not unconstitutional, and that the court erred in its judgment.

Reversed and remanded.