## Ex Parte Guiseppe Gilletti *et al.*

## Opinion filed Dec. 8, 1915.

1. While the title of an act is by the constitution required to briefly express the subject of the enactment, it need not state matters properly connected with such subject that are embraced in the body of the law; and the language used in expressing the subject of the enactment is within the legislative discretion.

2. If the language of the title considered with reference to the legislative intent as shown by the purpose and object of the act, may by any fair intendment cover the subject of the act, the courts will not because of an asserted defective title refuse to give effect to any matter contained in the body of the enactment that is germane to or properly connected with the subject of the law, where the title is not so worded as to mislead an ordinary mind as to the real purpose and scope of the particular enactment.

3. A wide latitude must of necessity be accorded to the legislature in its enactments of law; and it must be a plain case of violating the requirements of the organic law as to titles of acts before the courts will nullify statutes or portions thereof as not being within the purpose and scope of the subject as expressed in the title and of "matter properly connected therewith."

4. If the title of an act fairly gives notice of the subject of the act so as to reasonably lead to an inquiry into the body thereof, it is all that is necessary. The title need not be an index to the contents of the act.

5. It cannot be said beyond a reasonable doubt that a provision requiring a license for taking oysters from the salt waters of the State may not fairly be included in or properly connected with the subject expressed in the title of Chapter 6877 as "An Act to protect and regulate the salt water fishing industry of the State of Florida."

6. The provision of Chapter 6877 requiring an alien or non-resident to pay a license tax of ten dollars per annum before they can "engage in taking fish or oysters from the salt waters of this State for any purpose other than his own individual use," applies to aliens or non-residents of the State who "engage in taking fish or oysters" on their own account, not to laborers who are employed to take fish or oysters for their employers. As so construed and applied the statutory provision does not violate organic or treaty rights.

7. The State may without denying "to any person within its jurisdiction the equal protection of the laws," justly discriminate in favor of its citizens in regulating the taking for private use of the common property in fish and oysters found in the public waters of the State, where such regulations have a fair relation to and are suited to conserve the common rights which the citizens of the State have in such fish and oysters as against aliens and non-residents of the State.

8. The equal right of all persons who reside in a State whether citizens or aliens to labor therein does not include an equal right of an alien to participate in the common property and privileges that are peculiar to citizens.

9. Chapter 6877 does not purport to discriminate against aliens and non-residents with reference to private property rights

or the right to labor or to deal in fish and oysters after they lawfully become private property.

10. The provision of section 17 Article V of the constitution that the County Judge "shall issue all licenses required by law to be issued in the county," is not violated by the provision of Chapter 6877 requiring the Commissioner of Agriculture to issue licenses for fishing privileges in the public waters of the State.

Original Petition in Habeas Corpus.

Petitioners remanded.

*W. J. Oven,* for Petition;

*T. F. West,* Attorney General, and *Fred T. Myers,* contra.

WHITFIELD, J.—A petition was presented to a Justice of this court in which it is alleged that the petitioners are unlawfully held in custody by the Sheriff of Franklin County under charges that each of them being an alien of the State of Florida, did in October, 1915, in Franklin County, Florida, remove from a public oyster bar certain oysters without first having paid a license of ten dollars as provided by law; that the license required and the law referred to being covered and embraced in the sixth subdivision of Section 14, Chapter 6877, Laws of Florida, Acts of 1915, the title to which act is "An Act to Protect and Regulate the salt water fishing industry of the State of Florida, and To Provide Penalties for the Violation of this Act," and the provision of said act under which the petitioners are held is as follows: "Whoever being

an alien or non-resident of this State, and who shall engage in taking fish or oysters from the salt waters of this State for any purpose other than his own individual use, shall be required to pay a license tax of ten dollars per annum;" that said statutory provision under which the relators are held is inoperative in that it violates Section 16 of Article III of the Constitution, because the taking of *oysters* from the salt waters of the State is not included in, nor properly connected with the subject of protecting and regulating the salt water fishing industry in the State, as expressed in the title of the act; and that the said statutory provision violates treaty rights and denies to petitioner the equal protection of the law.

A writ of *habeas corpus* was issued by the Justice to whom the petition was presented, and, because of the public interests involved, the writ was made returnable before this court.

The Attorney General moves for a remand of the petitioners on the ground that the return showing the custody as alleged is sufficient in that the statute is not invalid or inoperative.

While the title of an act is by the constitution required to briefly express the subject of the enactment, it need not state matters properly connected with such subject that are embraced in the body of the law; and the language used in expressing the subject of the enactment is within the legislative discretion.

If the language of the title considered with reference to the legislative intent as shown by the purpose and object of the act, may by any fair intendment cover the subject of the act, the courts will not, because of an asserted defective title refuse to give effect to any matter contained in the body of the enactment that is germane to

or properly connected with the subject of the law, where the title is not so worded as to mislead an ordinary mind as to the real purpose and scope of the particular enactment.

A wide latitude must of necessity be accorded to the legislature in its enactments of law; and it must be a plain case of violating the requirements of the organic law as to titles of acts before the courts will nullify statutes or portions thereof as not being within the   purpose and scope of the subject as expressed in the title and of "matter properly connected therewith."

If the title of an act fairly gives notice of the subject of the act so as to reasonably lead to an inquiry into the body thereof, it is all that is necessary.   The title need not be an index to the contents of the act.   Butler v. Perry, 67 Fla. 405, 66 South. Rep. 150.

It cannot be said beyond a reasonable doubt that requiring a license for taking oysters from the salt waters of the State may not fairly be included in, or properly connected with the subject expressed in the title of Chapter 6877 as "An Act to protect and regulate the salt water fishing industry of the State of Florida."   See *Ex parte* Pricha, decided at this term; *Ex parte* Taylor, 68 Fla. 61, 66 South. Rep. 292.   The title to the act is not misleading.   See *Ex parte* Powell, decided at this term.

The provision of the statute requiring an alien or non-resident to pay a license tax of ten dollars per annum before they can "engage in taking fish or oysters from the salt waters of this State for any purpose other than his own individual use," applies to aliens and non-residents of the State who "engage in taking fish or oysters" on their own account, not to laborers who are employed to take fish or oysters for their employes.

As so construed and applied, the statutory provision does not violate organic or treaty rights. The State may without denying "to any person within its jurisdiction the equal protection of the laws," justly discriminate in favor of its citizens in regulating and taking for private use of the common property in fish and oysters found in the public waters of the State, where such regulations have a fair relation to and are suited to conserve the common rights which the citizens of the State have in such fish and oysters as against aliens and non-residents of the State. The equal right of all persons who reside in a State whether citizens or aliens to labor therein does not include an equal right of an alien to participate in the common property and privileges that are peculiar to citizens. The statute does not purport to discriminate against aliens and non-residents with reference to private property rights or the right to labor or to deal in fish and oysters after they lawfully become private property. See Patsone v. Commonwealth of Pennsylvania, 232 U. S. 138, Sup. Ct. Rep. ; Traux v. Raich, 239 U. S. 33, Sup. Ct. Rep. , decided November 1st, 1915.

As the licenses required to be obtained are for the State and no license tax is permitted to be collected for any county, the authority given a State officer to issue the license does not conflict with the constitutional provision that the County Judge "shall issue all licenses required by law to be issued in the county." Sec. 17, Art. V Const.

The statute is not invalid or inoperative for the reasons asserted and the petitioners will be remanded.

TAYLOR, C. J., and SHACKLEFORD and ELLIS, JJ., concur.

COCKRELL, J., absent on account of sickness.