E. E. WHITE, *Plaintiff in Error*, v. MOSES PENTON, AS SHERIFF OF ESCAMBIA COUNTY, FLORIDA, *Defendant in Error*.

Division A.

Opinion Filed October 28, 1926.

1. That portion of Chapter 10123, Laws of 1925, Sec. 1, providing that it shall be unlawful for any person to have in his possession certain fish of less than a specified size, does not transcend, in violation of Art. 3, Sec. 16 of the Constitution of Florida, the title to said Act, which title is, in part, "An Act to protect and regulate the salt water fishing industry * * *", even though the act be construed to prohibit the possession in Florida of fish lawfully acquired in another State.

2. Generally speaking, laws passed by a State in the appropriate exercise of its police power, not in conflict with the laws of Congress upon the same subject, but indirectly or remotely affecting interstate commerce, are nevertheless valid laws.

·3. That portion of Chapter 10123, Laws of 1925, Sec. 1, providing that it shall be unlawful for any person to have in his possession certain fish of less than a specified size, is not repugnant to the commerce clause of the Federal Constitution, even though that portion of the Act be construed as applicable to the possession of fish lawfully acquired in another State and imported into the State of Florida in interstate commerce.

4. The object of the writ of *habeas corpus* is not to determine whether a person has committed a crime or the justice or injustice of his detention on the merits, but whether he is legally imprisoned or restrained of his liberty.

5. The use of the writ of *habeas corpus* to test the sufficiency of the evidence upon which a charge may have been based is not sanctioned by this Court. Nor is that writ available to review the sufficiency of a substantive defense.

A Writ of Error to the Circuit Court of Escambia County; A. G. Campbell, Judge.

Affirmed.

*J. McHenry Jones,* for Plaintiff in Error;

*Forsyth Caro,* for Defendant in Error.

STRUM, J.—Plaintiff in error, hereinafter called the petitioner, stands charged with the offense of unlawfully having in his possession mullet of smaller size than ten inches in length, and having been committed to jail by the County Judge, seeks to test the legality of his detention by habeas corpus. Upon hearing before the Circuit Court petitioner was remanded to custody and was allowed and took writ of error. The validity and scope of Chap. 10123, Acts of 1925, under which the affidavit, warrant and subsequent

commitment were issued, are challenged by petitioner in three major particulars.

Petitioner's first contention is that the Act violates Article 3, Section 16, of the Constitution of Florida, in that "the title does not express the subject matter of the Act." Petitioner urges that from its title the apparent purpose of the Act is only to regulate the taking of fish from Florida waters and to define the character of certain waters as salt or fresh, and that the title does not sufficiently indicate that the mere possession of fish of prohibited sizes, when lawfully acquired in another State, is denounced as an offense by the body of the Act.

The title of the Act assailed is:

"An Act to Protect and Regulate the Salt Water Fishing Industry in the State of Florida, and to declare certain fresh waters in this State salt waters for the purpose of this Act and to define certain waters as salt waters."

Petitioner is charged with violation of Section 1 of said Act, which provides, amongst other things:

"It shall be unlawful for any person, persons, firm or corporation to take, have in his or their possession, buy, sell or offer for sale at any time, or unnecessarily destroy any of the fish known as * * * mullet * * . * of less length than twelve inches from tip of nose to fork of tail, provided, however, that mullet of ten inches can be taken in the waters at points located west of Aucilla River to the Alabama Line, provided, however, that silver mullet of a less length than twelve inches may be caught and possessed during the open season."

The title of an Act need not be an index to the contents of the latter; neither is it necessary that the title of an Act should give a synopsis of all the means by which the object of the law is to be accomplished. Ex parte Guiseppe Gilletti, 70 Fla. 442, 70 South. Rep. 446; *Ex parte* Pricha, 70 Fla. 265; 70 South. Rep. 406; *Ex parte* Wells, 21 Fla. 280;

Comm'rs of Duval County v. City of Jacksonville, 36 Fla. 196; 18 South. Rep. 339; State v. Bryan, 50 Fla. 293; 39 South. Rep. 929; Butler v. Perry, 67 Fla. 405; Campbell v. Skinner Mfg. Co., 53 Fla. 632; 43 South .Rep. 874.

The Act under consideration is designed, amongst other things, to guard against a premature depletion of the available supply of mullet, and other designated fish, by prohibiting the capture of such fish while immature. Such a measure tends to conserve the source of supply of a wholesome food commodity, and when reasonable in its restrictions, is obviously a "protection" to the fishing industry and a valid "regulation" thereof. That portion of the Act which prohibits the buying, selling or possession of fish of forbidden sizes is incidental to the principal object of the Act—the protection and regulation of the salt water fishing industry—and is but a means by which that object is to be accomplished.

As such, a specific reference thereto in the title is not indispensable to the constitutional validity of the Act. By also prohibiting the possession of and trading in immature fish the legislature provides a most practicable and effectual means of accomplishing the desired and specifically designated "protection" to the fishing industry. Such provisions are frequently found in regulatory measures of this nature as a means of accomplishing the principal object of the Act (See Massey v. U. S., 281 Fed. 295), and have been held to be sufficiently expressed by titles counched in language of equivalent import with the title now under consideration. People v. O'Neill, 71 Mich. 325, 39 N. W. Rep. 1; State v. Harrub, 95 Ala. 176, 10 South. Rep. 752; 15 L. R. A. 761; Magner v. People, 97 Ill. 320. Furthermore, it seems to us that a provision which prohibits the possession of or trading in certain immature fish, is a matter properly connected with an Act the object of which, as de-

clared by its title, is to *"protect and regulate"* the fishing
industry.   See *ex parte* Giletti, 70 Fla. 442; 70 South. Rep.
446; People v. Sayer, 92 N. E. Rep. 900; Cawsey v. Brickey,
144 Pac. Rep. 938.   The possession of immature fish is a
matter clearly germane to the protection of the fishing in-
dustry.   This Court has said that, "it is a sufficient com-
pliance with Sec. 16 of Art. 3 of the Constitution if the
*subject* is expressed in the title of the Act, the matters
properly connected with such subject not being required to
be expressed in the title."   Hayes v. Walker, 54 Fla. 163;
44 South. Rep. 747; Thompson v. State, 66 Fla. 206; 63
South. Rep. 423; *Ex parte* Pricha, *supra*.   The title to the
Act under consideration is neither deceptive nor mislead-
ing, but is sufficient to reasonably lead an ordinary mind
to an inquiry into the body of the Act for the purpose of
ascertaining the means by which the "protection and regu-
lation" of the fishing industry is to be accomplished.   Nor
would the body of the Act clearly transcend the title, in
violation of Art. 3, Sec. 16, of the Constitution of Florida,
even though the Act be construed to prohibit the possession
in Florida of fish lawfully acquired in another State.

Petitioner next contends that the Act was not intended
to prohibit the possession of fish lawfully acquired in an-
other State, and that if it does apply to the possession of
fish so acquired and imported into the State of Florida in
interstate commerce, it is to that extent in conflict with the
commerce clause of the Federal Constitution and hence in-
valid.   Upon the latter phase of the question just stated
petitioner has cited good authority to support his conten-
tion.   See People v. Buffalo Fish Co., 164 N. Y. 93; 58 N.
E. Rep. 34, 79 A. S. R. 622; In re: Davinport, 102 Fed.
541; McDonald and Johnson v. Southern Express Co., 134
Fed. 282.   Subsequent, however, to the decisions last cited,
the Supreme Court of the United States, the final authority

in the construction of the Federal Constitution, has settled the question contrary to the contention of petitioner as supported by those cases just referred to.

In People, *ex rel.* August Silz, v. Henry Hesterberg, 211 U. S. 31; 53 L. ed. 75, the essential facts were that Silz, a restaurant keeper, had in his possession in New York State certain game birds during the closed season for those birds in the State of New York and at which time the possession of such birds, whether coming from without the State or taken within the State, was prohibited by a New York statute. The birds in question were sound, wholesome and valuable articles of food, recognized as articles of commerce, and were lawfully taken and captured in foreign countries and thereafter sold and consigned to Silz in New York by a dealer in London. The birds were imported by Silz in accordance with the provisions of the tariff laws and regulations in force, and during the open season for such birds in New York, but were retained in his possession until and during the period defined by the New York statute as the closed season. In that case the Supreme Court of the United States pointed out that laws passed by the States in the appropriate exercise of the police power of the latter, not in conflict with laws of Congress upon the same subject, but indirectly or remotely affecting interstate commerce, are nevertheless valid laws. It was held by the Court that ''foreign commerce is not unconstitutionally regulated by the provisions of the New York laws of 1900, Chap. 20, under which the possession of game within the State during the closed season—except upon giving the bond provided by the statute against its sale—is forbidden, although the game may have been lawfully taken in foreign countries during the open season there.'' It seems to us that this case settles the question of whether or not Sec. 10123 is in conflict with the commerce clause of the Federal

Constitution.   The statute under consideration is not directed against interstate commerce or any of its regulations, but relates to the rights, duties and liabilities of citizens of Florida, and in the respect under consideration it affects the regulation of interstate commerce only indirectly, incidentally and remotely, if at all, and is not in conflict with any law of Congress upon the subject embraced in Chapter 10123, Acts of 1925.   It therefore follows that even though the statute be construed as applicable to the possession of fish lawfully acquired in another State and imported into the State of Florida in interstate commerce it would be obligatory upon persons within the territorial jurisdiction of Florida, and in that respect it would not be repugnant to the commerce clause of the Federal Constitution.   See Sherlock v. Alling, 93 U. S. 99, 23 L. Ed. 819; Geer v. Connecticut, 161 U. S. 519; 40 L. Ed. 793; Sligh v. Kirkwood, 65 Fla. 123; 61 South. Rep. 185; 237 U. S. 52; 59 L. Ed. 835; Lawton v. Steele, 152 U. S. 133; 38 L. Ed. 385; People ex rel. Silz v. Hesterberg, 76 N. E. Rep. 1032; 3 L. R. A. (N. S.) 163; People v. Lassen (Mich.), 106 N. W. Rep. 143; Javins v. U. S., 11 App. (D. C.) 345; In re: Deininger, 108 Fed. 623.   See also cases cited 10 U. S. Comp. Stat. (1916) pp. 13195, 13334, 13387, 14419; State v. Harrub, 95 Ala. 176.

Petitioner's contention that the terms of the Act are not broad enough to prohibit the possession of mullet lawfully acquired in another State and imported into the State of Florida also finds substantial support in the authorities. See:   Dichaut v. State, 85 Md. 451, 60 A. L. R. 332; Commonwealth v. Hall, 128 Mass. 412, 35 Am. Rep. 387; Commonwealth v. Wilkinson, 139 Pa. St. 298; State v. McGuire, 24 Ore. 367; State v. Terry, 99 S. C. 507; 83 S. E. Rep. 970; Tyler v. State, 93 Mo. 309, 48 Atl. Rep. 840; People v O'Neil, (Mich.) 39 N. W. Rep. 1. · There are, however, au-

thorities to the contrary. See: Magner v. People, 97 Ill., 320, and cases therein cited; People v. Booth Fisheries, 97 N. E. Rep. 837. But that question is not properly before us for determination upon this record. In the respects in which it is here under consideration, we have held the Act to be valid, even though it prohibits the possession in Florida of fish lawfully acquired in another State. No point is made either against the form of the process under which petitioner is held or the jurisdiction of the committing magistrate. Petitioner asserts, however, that the possession of mullet lawfully acquired in Alabama and subsequently brought into Florida is not an offense within the scope of the Act, and that because the fish in his possession were so acquired, he is not charged with an act which is made an offense by law, and hence is entitled to his discharge on habeas corpus. See: *Ex parte* Prince, 27 Fla. 196; 9 South. Rep. 659; In re: Robinson, 73 Fla. 1068, 75 South. Rep. 604. This contention assumes that petitioner is *charged* with the unlawful possession of mullet lawfully acquired in Alabama. But that is not the case. If it were, a different question might then be presented. The charge against petitioner is that on a named date he "did then and there *unlawfully* have in his possession mullet of smaller size than ten inches in length, contrary to the form of the statute," etc. That the Act prohibits as unlawful the possession of mullet of less than the size specified, when caught in the waters of Florida, is not questioned. The charge *as made* therefore does not wholly fail to state an offense under the statute, within the rule stated in *ex parte* Prince, *supra*, and In re: Robinson, *supra*. On the contrary, the Act *charged* against the petitioner in the affidavit, warrant and commitment pursuant to which he is detained is clearly an offense under the statute. Even though we might hold that the possession of mullet lawfully acquired in Alabama and imported into Florida was not an offense under the Act, the

facts stated would not reach the legality of petitioner's detention under the charge made against him, but would merely present a question of petitioner's guilt or innocence of the offense charged, that is, whether or not he has committed that offense. The object of the writ of habeas corpus is not to determine whether a person has committed a crime, or the justice or injustice of his detention on the merits, but whether he is legally imprisoned, or restrained of his liberty. Horner v. U. S. 143 U. S. 57; 36 L. Ed. 266; *Ex parte* Crouch, 112 U. S. 178; 28 E. Ed. 690; Cross v. Foote, 88 S. E. Rep. 594; Crowley v. Gannon, 186 Pac. Rep. 117; People v. Quigley, 134 N. Y. Supp. 953; 29 C. J. 24. The use of the writ of habeas corpus to test the sufficiency of the evidence upon which a charge may have been based is not sanctioned by this Court. State v. Vasquez, 49 Fla. 126, 38 South. Rep. 830. See also *Ex parte* Prince, *supra*, and In re: Robinson, *supra*. Nor is that writ available to review the sufficiency of a substantive defense. See: Hass v. Hinkle, 216 U. S. 462; 54 L. Ed. 569; In re: Corum, 62 Pac. Rep. 661; 12 R. C. L. 1244. We, therefore defer, until it is properly presented, upon writ of error or otherwise, the question of whether or not the possession of fish of a smaller size than that specified in the Act, when lawfully acquired in another State, is forbidden by the Act.

The order remanding petitioner is affirmed.

Affirmed.

BROWN, C. J., AND ELLIS, J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.