212 So.2d 296 (1968)
L.S. KENNY and Pinellas Seafood, Inc., a Florida Corporation, Appellants,
v.
Claude R. KIRK, Jr., Governor of the State of Florida; Tom Adams, Secretary of State of the State of Florida; Earl Faircloth, Attorney General of the State of Florida; Bud Dickinson, Comptroller of the State of Florida; Broward Williams, Treasurer of the State of Florida; Floyd Christian, Supervisor of Public Instruction of the State of Florida; Doyle Conner, Commissioner of Agriculture of the State of Florida, As and Constituting the State Board of Conservation of the State of Florida; and Randolph Hodges, As Director of the Board of Conservation of the State of Florida, Appellees.
No. 36552.
Supreme Court of Florida.
July 2, 1968.
*297 Joseph C. Jacobs and Burnis T. Coleman of Ervin, Pennington, Varn & Jacobs, Tallahassee, for appellants.
Earl Faircloth, Atty. Gen., Robert A. Chastain, Asst. Atty. Gen., and Philip S. Bennett, Tallahassee, for appellees.
ADAMS, Justice.
Appellants filed a bill for a declaratory decree under Chapter 87, Florida Statutes, F.S.A., asking the Court to hold Sections 370.14(4) and (5) unconstitutional.
An answer was filed, testimony was taken and the Court denied the relief asked and held the Statutes valid.
Appellants have appealed from that decree and the first question presented to us for decision is whether the enforcement of the Statute in question is a violation of the right of the appellants to possess and enjoy private property vouchsafed by the Constitution of Florida.
The challenged Statutes read:
"(4) Closed season.  No person, firm, or corporation shall take or have in his possession, regardless of where taken, any salt water crawfish (spiny lobster or crayfish) of the species panulirus argus, between March 31 and August 1, of each year, except as provided by section 370.141, Florida Statutes, for storage and distribution of inventory stocks.
(5) Carriers.  No common carrier or employee of said carrier may carry or knowingly receive for carriage or permit the carriage of any crawfish of the species panulirus argus, regardless of where taken, between March 31 and August 1, of each year, except of the species panulirus argus lawfully imported from a foreign country for reshipment outside of the territorial limits of the state; but in no case will such shipment be permitted to pass through the territorial limits of the state unless accompanied by certified invoice and the crawfish must be immediately shipped out of the state from the port of entry and may not be processed or repackaged in any manner while in Florida."
The appellants are engaged in catching crawfish and purchasing crawfish from others in the international waters fifty (50) miles and more beyond the Florida coastline. They desire to bring their catch into the ports of Florida and ship them by common carrier to processing plants and markets. These crawfish are indistinguishable from those in the native waters of Florida. There are no federal laws or regulations affecting appellants' business in the international waters even though the catch is brought directly into a Florida port. Under federal regulations however, shipments of crawfish from foreign ports must enter Florida at designated ports of entry and during the Florida closed season must be shipped in bond by a land common carrier to another port of entry where possession is legal before being released into the channels of trade.
The closed season is from March 31 to August 1 of each year. The obvious purpose of the Statute was an endeavor to protect the crawfish industry and in passing the Statute the Legislature conceived this to be the most feasible way to police the industry and safeguard disturbing the crawfish during their breeding season.
The Legislature obviously had the benefit of expert testimony as the trial court did, which established the fact that the crawfish from the Florida waters and those imported from the international waters were so similar that one could not be detected from the other. It was the Legislature's *298 prerogative and duty to safeguard the crawfish industry within the jurisdiction of Florida and the waters adjacent thereto. They performed that duty by enacting the Statutes in question and we fail to find any reason to strike them down on constitutional standards.
The appellants have not been singled out but the law applies to all alike to insure protection of the crawfish during the breeding season. The purpose of the Statute was good and its application is general and uniform as to all, hence it meets constitutional requirements. The broad concept of this method of protecting wild life is not new. This form of protection to wild life has been invoked from time immemorial to safeguard the future of the industry. See 36A C.J.S. Fish § 29; People of State of New York, ex rel. Selz v. Hesterberg, 211 U.S. 31, 29 S.Ct. 10, 53 L.Ed. 75; White v. Penton, 92 Fla. 837, 110 So. 533; Taylor v. Penton, 99 Fla. 1067, 128 So. 499.
We have not overlooked appellants' citation of Delmonico v. State, Fla., 155 So.2d 368, but we reject its application to the case at hand.
The second and last contention of appellants is that Section 370.14(5), Florida Statutes, F.S.A., is the denial of due process of law and equal protection.
We find this contention without merit. The State is precluded from assuming any jurisdiction contrary to the commerce of the United States. The Legislature no doubt rightly surmised that there was little likelihood that shipments in bond would be commingled with the Florida crawfish.
Finding no reversible error in the record, the decree is affirmed.
CALDWELL, C.J., THOMAS, ROBERTS and DREW, JJ., SPECTOR, District Court Judge, and WHITE, Circuit Judge (Retired), concur.