W. M. Pepper and E. D. Turner, as Receivers of and for the Florida Bank & Trust Company, *Appellants,* v. B. P. Beville, *Appellee.*

Division A.

Opinion filed June 30, 1930.

98

*E. G. Baxter* and *E. A. Clayton,* for Appellants;

*Hampton & Hampton,* for Appellee.

BROWN, J.—Appellee Beville filed a bill in the circuit court for Alachua County against the appellants as receivers of the Florida Bank & Trust Company. The allegations of the bill were in substance as follows: Complainant was the owner of seven described pieces of jewelry, among which was a two-carat diamond platinum ring. He had borrowed from said bank $6,500.00, and had placed the jewelry in the bank's possession as collateral security for the loan. The debt had been reduced from time to time to the sum of $2,000.00, evidenced by a renewal note.

Shortly thereafter the bank failed and the defendants were duly appointed receivers therefor. The receivers notified complainant that they held said note and requested payment. Complainant called upon the receivers for the purpose of paying the note and was informed by them that the diamond ring ·had been misplaced and could not be found. Complainant offered to pay said note upon delivery to him of all the collateral, including the ring, or upon the delivery of the collateral which they still had and the crediting of the value of the missing ring upon the debt. Defendants refused to make any adjustment, demanded full payment, and thereafter placed the note in the hands of an attorney for collection, who likewise refused to make any adjustment or allowance for the missing ring. Shortly thereafter complainant was served by the sheriff with a notice of an intended sale by the defendants of complainant's remaining collateral to the highest bidder for cash at a certain time and place for the satisfaction of the note and attorney's fees. The value of the collateral proposed to be sold was considerably greater than the amount of the debt, and the ring which the bank or the receivers lost was worth $1,400 to $2,000. The bill further alleged that complainant was entitled to an accounting for the value of the collateral thus lost through the negligence of the bank, or of defendants as its receivers; that complainant was ready, able and willing to pay whatever amount should be found to be due by him to the bank or its receivers upon an accounting to him for the value of that part of the collateral which had so been lost or destroyed, but that he should not be required to pay any attorney's fees, as he had not been in default, but had ever been ready, able and willing to pay the note upon an allowance being made for the value of the missing collateral. The bill prayed that the defendants be enjoined from dis-

posing of the collateral until further order of the court, and that an accounting be had under the direction of the court of the value of the missing collateral, and the amount of the debt, and that upon failure to produce the collateral, the complainant should be allowed credit therefor, and that, upon payment by complainant of the balance due, the defendants be required to surrender to him the remaining collateral, and that the injunction be then made perpetual. There was also a prayer for general relief. The bill was duly sworn to, and the temporary injunction was granted.

To this bill the defendants filed a plea setting up the failure of complainant to file his claim with the receivers within one year from the date of the failure of said bank, as required by the statute now appearing as Section 6104, Comp. Gen. Laws, and alleging such failure in bar of complainant's right to maintain the suit. This point was also raised by paragraph 6 of the answer, as well as by the demurrer incorporated therein, which demurrer also attacked the equity of the bill. On hearing, the plea was overruled by the court, and paragraph 6 of the answer stricken on motion.

The answer admitted the pledging of the collateral described in the bill to secure the note and the insolvency of the bank, but alleged that complainant owed the bank two other notes of $1,000.00 each, which were discussed in the negotiations concerning the alleged attempted adjustment. The evidence subsequently taken developed a dispute as to complainant's liability on these two additional notes, for this and other reasons we cannot say that the chancellor was in error in omitting any provision regarding them from his final decree. The receivers testified that when the assets of the bank, including the note and the complainant's pledged jewelry, were turned over to them, the ring in question was not delivered to them, and had never

come into their possession. Just at what time the ring disappeared, whether while the bank was still operating, or between the date of its closing and the time when the receivers took charge, is not shown by the evidence.

Upon final hearing on pleadings and proof, the chancellor rendered a decree making the injunction perpetual and finding the equities with the complainant. The chancellor decreed that the complainant was entitled to credit on the $2,000 note for the value of the pledged diamond ring, which was ascertained from the testimony to be $1,275 at the time of the filing of the bill; this, in addition to a credit of $142.76 entered on the back of the note; and ordered the complainant to pay the balance, $1,101.57, to the defendants within ten days, the defendants being required to then surrender to the complainant the remaining pledged property, the six pieces of jewelry. That should complainant fail or refuse to pay the $1,101.57 as provided, the balance of the collateral pledged should be sold at public outcry by a special master named, after giving prescribed notice by advertisement, to satisfy the amount found to be due by the decree, which was to be paid over to the defendants, and the overplus, if any, to be paid to the complainant or his solicitor.

A petition for rehearing was filed by the defendants, and in an order denying such petition, the learned chancellor embraced the following pertinent observations:

"In passing upon the Motion for a Rehearing this Court is not unmindful of the ruling of the Supreme Court that 'A bill in equity for an injunction will not lie for a trespass or a wrongful conversion of chattels because of an adequate remedy at law, and unless a chattel has some peculiar value.' But this is not a case between pledgor and pledgee, but a case in which the Court must take judicial notice (having by its

own order confirmed the appointment of the Receivers) that the defendant who committed the wrong that deprived complainant of his property is insolvent. To say that this complainant has an adequate remedy at law is but to assert that his suit should be for the conversion of the property. Against whom? Not against the Receivers, for the Receiver is only answerable for the acts and negligence of his own servants and not for the acts and negligence of the corporation itself before he assumed control; he does not represent the corporation in respect to such transactions, and the negligent acts or wrongs committed by the corporation before the appointment of Receivers are independent transactions for which the corporation is alone responsible. This being true, the suit at common law would necessarily have to be brought against the corporation (if such a suit could be maintained against a corporation for whom a Receiver has been appointed) which this Court knows to be insolvent; and while a defunct corporation may be a living entity for some purposes so long as its Receivers are administering its assets, yet to say that it can be sued at law—such insolvent corporation in the case at bar—and that the complainant's remedy would be fully complete and adequate is, in the opinion of this Court going much further than our Supreme Court has gone in declaring that an injunction will not lie for a wrongful conversion of chattels because of an adequate remedy at law.''

From the final decree and the decree denying the rehearing this appeal is prosecuted.

The overruling of the plea alleging the failure of the complainant to file claim with the receivers under Section 6104, Comp. Gen. Laws, is assigned as error. While the

statute says that "all claims of every kind and nature" against a State bank or trust company must be properly sworn to and filed with the receiver within one year from the failure of the bank or trust company, this language is immediately followed by the clause, "and no claims which were not so filed within twelve months from the date the place of business of the bank or trust company was closed shall be included by the receiver or Comptroller in the distribution of the assets." This indicates that the statutory provision applies to those claimants who would be entitled to participate in the distribution of the proceeds arising from the liquidation of the assets of the closed bank or trust company. This complainant was not asking or expecting to participate in the distribution of the assets of the bank. He was only asking that he be permitted to pay his note to the bank and get back his pledged property, or a credit on the note for the value of such part thereof as had been lost or destroyed by reason of the negligence of the bank or its receivers. In effect, he was asking that he be permitted to pay what he was justly due the bank or its receivers on his note. The pledged jewelry was not, strictly speaking, the property of the bank or its receivers, and therefore not necessarily a part of the assets of the bank in the hands of such receivers subject to distribution. The title remained in the complainant, the pledgor. Only a special property for a special purpose passed to the pledgee bank or its receivers.

Strictly speaking, the term "collateral," or "collateral security," denotes a pledge of incorporeal personal property, such as stocks, bonds, choses in action, etc., while a "pledge" may be defined as a deposit of corporeal personal property as security, with an express or implied power of sale upon default. This power of sale without resort to judicial proceedings is one of the features which distinguishes a pledge from a lien. Judge Story defined a

pledge as "a bailment of personal property as a security for some debt or engagement." And Mr. Justice Willes held that the right to the property vests in the pledgee only so far as is necessary to secure the payment of the debt. The legal title and general ownership of pledged property remains in the pledgor, while only a special property—for a special purpose—passes to the pledgee, and this special property is not enlarged by the pledgor's default in paying the debt secured at its maturity. The pledgee may detain the pledge until the debt is paid, or sell it, after default, but subject to this power or special property right, the pledgor retains the legal title and general property right in the goods pledged. See 49 C. J. 895, et seq., and Jones Collateral Securities and Pledges, 3rd ed., Sections 1 to 7. And there is an implied agreement on the part of the pledgee for the safekeeping and return of the pledge upon payment of the debt. *Id.*, Sec. 494.

Surely it cannot be said that the bank's assets in the hands of the receivers would have been reduced or impaired if the duty to safely keep the pledged property had been complied with and the receivers had returned to complainant all of the pledged property upon his paying the note. How can it be said, therefore, that the receivers could lawfully take advantage of their own wrong, or that of the bank, by failing to safely keep the pledged property in such sort as to require the complainant to file a claim for a proportionate distribution of the bank's assets instead of simply allowing him credit on his note for the value of that part of the pledged property which they—without fault on his part—were unable to return when he offered to pay? Then it was that their duty to return or offer to return the pledged property, or to allow credit for such part as had been lost, arose.

It has been held that where a receiver brings an action for the purpose of collecting assets of an insolvent corpo-

ration, defendant may set off a claim in such action although it had not been filed in pursuance of notice to creditors given in accordance with a court order. 34 Cyc. 342-3, and cases cited. And in bankruptcy proceedings, while the federal law requires that all claims against the estate of the bankrupt must be filed within one year after the adjudication, it has been held that an equitable claim for services rendered, by way of deduction from a fund realized for creditors through the services and expenditures of the claimant in an effort to collect insurance policies assigned to him by the bankrupt before adjudication, should not be precluded from being allowed because of failure to file proof thereof under the statute. In re: Levitt, 126 Fed. 889. And a debt of the bankrupt secured by a lien upon particular property need not be proved in order to preserve the creditor's rights as against such property. 7 C. J. 312. See also in this connection First Am. Bank v. Town of Palm Beach, 117 So. R. 900, 96 Fla. 247.

In the instant case, the receivers did not bring suit, but advertised the pledged property, or what was left of it, to be sold at public outcry, thus threatening the complainant with the sacrifice of his property, and refusing to allow him credit for the value of that portion which had been lost or destroyed. It was then that the particular right which the complainant seeks to enforce in equity really arose, though founded upon the original transaction with the bank. Under the facts of this case, we do not think the complainant was precluded from seeking the relief prayed for in his bill because of his failure to file proof of claim under Section 6104, Comp. Gen. Laws. As above indicated, that statute is evidently intended to apply to parties who seek to participate in the distribution of the funds which shall come into the hands of the receivers of the insolvent corporation, as the only penalty provided therein is that a party

who fails to file a claim shall not be allowed by the Comptroller or the receiver to participate in the distribution of the assets. The action of the complainant in this case is really defensive in its nature, and the cited statute does not apply.

Now, as to the contention that the bill was without equity as the complainant had an adequate remedy at law. This question was cogently dealt with by the chancellor in the quoted portion of his opinion. The proposed sale of complainant's property could only have been prevented by injunction. No defense could have been interposed at law. Had it been made, complainant would not have had the benefit of his entire collateral. The bank was insolvent, and a suit against it would not have afforded the complainant adequate, if any, relief. Nor was there any ground for an action of trover or conversion against the receivers, neither according to the bill nor according to their own pleadings and evidence. The receivers had never been in possession of the ring in question, nor could they be sued for damages for a tort committed prior to their appointment. High on Receivers, 3rd ed., Sections 395A and 397; Emory v. Farth, 113 Md. 253, 77 Atl. R. 386; Ann. Cas. 1912-A, 588.

In Jones on Collateral Securities, 3rd ed., Section 556, it is said:

"In general a bill in equity does not lie to redeem property from a pledgee, because the remedy at law upon a tender of the money is ample, the remedy at law being either a possessory action to recover the thing pledged, or an action in trover to recover its value.

"A special ground for proceeding in equity must be shown, as that a discovery is necessary or that an account is wanted, or that there has been an assignment of the pledge.

"Thus, if the pledgee is insolvent and has transferred the pledge to another who resides without the state, a court of equity will intervene for the relief of the pledgor, and upon proper bill filed compel a restoration of the pledge."

See also 49 C. J. 977 and Story's Eq. Juris., Section 1032. A strong case cited in support of the quoted text is Nelson v. Owen, 113 Ala. 372, 21 So. R. 75. It is true that in the instant case the pledge had not been assigned, but had been either lost or disposed of in some way, while in the possession of the pledgee, who had become insolvent, and no cause of action at law existed against the pledgee's receivers. Ordinary legal remedies to adequately protect the pledgor's rights, under the facts alleged and proven, there were none. In the Alabama case cited, quite similar in some respects to this case, Chief Justice Brickell said: "With much of closeness this court has adhered to the doctrine that where rights are legal and courts of law may proceed to a judgment which will afford complete justice and full protection to the parties, courts of equity will not intervene. When, however, there is in the case something exceptional, some peculiar fact or circumstance, rendering the remedy at law inadequate, equity will intervene, that complete justice may be done, and full protection afforded to the parties." We think this is such a case, and our conclusion is that the courts below committed no error in entertaining the bill, and in rendering the decrees appealed from. And the chancellor's findings on the essential facts of the case appear to be sustained by the evidence.

Affirmed.

TERRELL, C. J., AND ELLIS, J., concur.

WHITFIELD, P. J., AND STRUM AND BUFORD, J. J., concur in the opinion and judgment.