THE ATLANTIC NATIONAL BANK OF JACKSONVILLE v. CLYDE
H. SIMPSON, as Tax Collector, and A. H. ST. JOHN, as
Tax Assessor, of Duval County.

188 So. 636.
Division A.
Opinion Filed August 2, 1938.
On Rehearing March 21, 1939.

810

E. J. L'Engle, J. W. Shands, Edward W. Lane, Jr., and E. McCarthy, Jr., for Appellant;

George Couper Gibbs, Attorney General, and W. P. Allen and Lawrence A. Truett, Assistant Attorneys General, for Appellees.

BUFORD, J.—The appeal brings for review order dismissing second amended bill of complaint seeking to enjoin the collection of taxes levied and assessed against appellant as agent for its non-resident stockholders.

Appellant presents three questions for our consideration, as follows:

"I. Does an assessment in solido against a national bank,

'as agent for its non-resident stockholders,' presumably for shares of the bank's stock owned by non-residents, without showing the names or the number of such stockholders or the number of shares so assessed, or the value per share, amount to an assessment against the national bank itself, in violation of federal law?"

"II. Does the intangible tax Act of 1931 (Ch. 15789 impose a tax upon the shares of national banks owned by non-residents?"

"III. Is an assessment valid when made *in solido* against a national bank 'as agent for its non-resident stockholders,' which shows only the assessed valuation *in solido* and the total tax, but does not show the names of such non-resident stockholders or their number or the kind, description or quantity of the property assessed or its value per unit?"

The tax was assessed on the rolls for 1934 as follows:

"Atlantic National Bank of Jacksonville as agent for its non-resident stockholders, Jax. Fla. (Class A valuation) $264,355 (total tax) $528.71."

It was assessed on the rolls of 1935 as follows:

"Atlantic National Bank of Jacksonville, for its non-resident stockholders (Class A valuation) $290,780 (taxed at 2 mills) $581.56, (aggregate taxes) $581.56."

It was assessed on the rolls of 1936 as follows:

"Atlantic National Bank of Jacksonville for its non-resident stockholders (Class A valuation) $286,990 (total taxes) $573.98."

It was assessed on the rolls of 1937 as follows:

"Atlantic National Bank of Jacksonville as agent for its non-resident stockholders (Class A valuation) $329,080 (total taxes) $658.16."

It is averred that the assessments are void on the following grounds:

"1.   The plaintiff, being a national bank, is not subject to said tax or any State tax on or for any personal property owned by it in its own right.

"2.   There is no law of the State of Florida which authorizes the assessment of shares of stock of a national bank owned by non-residents of the State of Florida in the name of said bank as agent or otherwise.

"3.   Plaintiff has duly returned for taxation and has been assessed, and has paid taxes, for each of the years 1934, 1935, 1936 and 1937, for and on account of any and all personal property, tangible and intangible, of which the plaintiff had control, management or custody, either as executor, administrator, receiver or other fiduciary on January 1 of the years 1934, 1935, 1936 and 1937.

"4.   Each of said assessments fails to show the name or address of *the taxpayer* or of the owner or holder of the stock or shares or other property thereby assessed or attempted to be assessed; and plaintiff did not and does not know to how many or to what stockholders said assessments refer, or whether or not such unidentified stockholders or any of them are actually residents or non-residents.

"5.   Each of the said assessments fails to show the amount of the valuation for tax purposes of the intangible personal property thereby assessed or attempted to be assessed on said roll to or against the respective owners or taxpayers.

"6.   Each of said assessments so made or attempted to be made is not made in the county in which the taxpayer or taxpayers reside or have his or their usual domicile or in the county where any such taxpayer or taxpayers or any of them at any of the times mentioned in this bill of complaint resided or had his or their usual domicile.

"7.   The plaintiff is not and was not the person or body

corporate who owned or held any such property so assessed or attempted to be assessed.

"8. The property so assessed or attempted to be assessed is not included in the valuation of the personal property of either or any of the persons or bodies corporate by whom such property was owned or held.

"9. The plaintiff is not and has never been authorized to return for taxation in the name or on behalf of plaintiff's stockholders, resident or non-resident, or in its own name or on its own behalf, any shares of plaintiff's own capital stock owned or held by residents or non-residents of the State of Florida or of the County of Duval, and did not and has not returned any such shares for taxation for either of the years 1934, 1935, 1936 or 1937.

"10. Numerous shares of plaintiff's capital stock which were held and owned by non-residents of the State of Florida on January 1 of the years 1934, 1935, 1936 and 1937, respectively, have subsequently been sold and disposed of by such non-residents, and have been purchased and acquired by other and different persons; and, so it is, and the plaintiff avers the fact to be, that in such cases there is no means whereby plaintiff could reimburse itself or collect the amount of the intangible tax upon such shares from the persons who were the owners or holders thereof on the dates as of which intangible property was subject to Florida intangible taxes for any of the years 1934, 1935, 1936 or 1937. And plaintiff is without power or authority of law to pay such taxes out of its own assets or to charge the same as an expense of its business.

"11. The assessments in question do not give the names of the non-resident stockholders or the number of the bank shares owned by them, or any of them, or the assessed value placed upon the shares of such stockholders by the defendant Tax Assessor; and the plaintiff bank is therefore

without means of knowing or determining and does not know from said assessments the names of its stockholders claimed by said Tax Assessor to be non-residents of Florida or non-residents of Duval County, Florida, in respect to whose shares of stock said assessments were or may have been made respectively, or the number of their.shares of stock, or the value placed thereon, and no provision is made by law for the payment of such tax by plaintiff out of its own assets, and no means are provided by law or exist whereby said assessments may be apportioned by the plaintiff among the persons whose shares of stock or other property are sought to be assessed, and no means exist of collecting the same."

It is averred:

"Each of said intangible tax rolls for 1934, 1935, 1936 and 1937, respectively, when completed by the said Tax Assessor was thereafter duly delivered to the defendant Tax Collector of Duval County, Florida, and each of said completed tax rolls with the assessments appearing thereon as hereinabove described is now in possession of said Clyde H. Simpson as Tax Collector aforesaid, as a public record of Duval County, Florida; and a copy of each of said intangible tax rolls was retained by, and is now in the possession of said defendant A. H. St. John, as Tax Assessor aforesaid.

"And so it is, that each of the assessments hereinabove described is a matter of public record, and constitutes a cloud upon the title to numerous properties which are owned by the plaintiff in its own right, including, among others, the property owned by the plaintiff and occupied and used as plaintiff's banking house, and particularly described as follows:

"All of Lot Two (2), Except the East Fifty (50') feet, of Block Thrty-seven (37), Hart's Map of and situated in Jacksonville, Duval County, Florida.

"Upon occasion when abstracts of title have been issued by the persons in Duval County, Florida, who are engaged in the business of issuing abstracts of title, the aforesaid items on the said intangible tax rolls have been entered and made to appear in such abstracts as liens against the properties held by the plaintiff.

"VII. The defendant A. S. St. John, as Tax Assessor aforesaid, is now preparing the 1938 intangible personal property tax roll, and unless enjoined and restrained from so doing, will make an assessment or entry upon such 1938 roll in substantially the same form as has been made upon the intangible personal property tax rolls for the preceding years, and will assess or attempt to assess upon said roll to and in the name of the plaintiff The Atlantic National Bank of Jacksonville, as agent for its non-resident stockholders, certain intangible property, which will not be described on said roll, as it has not been described on the rolls for the preceding years, and will enter a certain valuation therefor and extend the tax thereon at the statutory rate, all as has been done upon the intangible personal property tax rolls for the preceding years." .

In the case of Harjim, Inc., *et al.*, v. Owens, Tax Assessor, 64 Fed. (2nd Series) 306, it was held:

"Further, it is well established that, where there is an adequate remedy at law, federal equity jurisdiction, to strike down or restrain the collection of state taxes, may not be invoked. Henrietta Mills v. Rutherford County, 281 U. S. 121, 50 S. Ct. 270, 74 L. Ed. 737; Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 219, 76 L. Ed. 447. The Fourteenth Amendment operates vigorously to guarantee to all persons equal protection of the laws, and to prevent actions under color of state statutes which are discriminatory or a denial of due process, and federal equity courts may be appropriately resorted to for relief against such oppressive

acts, Constantin v. Smith (D. C.) 57 F. (2d) 227; Sterling v. Constantin, 287 U. S. 378, 53 S. Ct. 190, 77 L. Ed. 375 but, where tax collections are concerned, such resort may be had only in the clearest case of deliberate and intentional discrimination and not then where there is available to plaintiffs an adequate remedy at law.

"Neither in their bill nor in their proof did plaintiffs make such a showing as entitles them to invoke federal equity jurisdiction. They sue for complete release from the payment of what they allege to be illegal taxes. They do indeed, in an apparent effort to comply with the Florida Constitution and statutes which require as a condition to equitable relief from illegal or unjust taxes that plaintiffs pay all taxes legally due (West Virginia Hotel Corporation v. Foster, 101 Fla. 1147, 132 So. 842, 846; Folsom v. Bank, 97 Fla. 426, 120 So. 317; Florida Growers, Inc., v. City of Stuart ]Fla.[ 141 So. 735), offer to pay such as may be found to be due, but they couple this offer with the positive affirmation that such determination is impossible, because the tax rolls are void, and they sue for a judgment so declaring and relieving them and their properties from the payment of any taxes for those years. The effect of these allegations is to assert that there are no taxes due by them, that the assessments are illegal and void *ab initio,* and that if taxes are collected the tax collector would, in an action for monies had and received, be compelled to pay them back. In such a case, their remedy at law to pay their taxes and sue to recover them back being, under the decisions of the Florida courts, complete and adequate, Seaboard Air Line R. Co. v. Allen, 82 Fla. 191, 89 So. 555, 557, federal equity jurisdiction may not be invoked."

Appellee relies on the opinion and judgment in that case to sustain the ground of its demurrer that complainant has a plain, complete and adequate remedy at law.

While it is true that appellant may have a remedy at law, if any remedy it had, we do not deem it to be such a plain, complete and adequate remedy as to preclude equity from taking jurisdiction.

The rule followed in the case of Harjim, Inc., v. Owens, *supra,* in the Federal Court, has been somewhat modified by our decisions. The rule established in this jurisdiction is:

"Equity will not take jurisdiction, where the remedy at law is full, adequate and complete; but where the remedy at relief is doubtful, and a more ample and appropriate remedy law is not full, complete and adequate, or where complete may be thereby afforded, equity will take cognizance, and give relief, if it can be done in accordance with recognized principles of chancery jurisdiction."

See McNabb v. Tampa & St. Petersburg Land Co., 79 Fla. 149, 83 Sou. 90; and to like effect, see Pepper v. Beville, 100 Fla. 97, 129 Sou. 334; Hillsborough County v. Dickenson, 125 Fla. 181, 169 Sou. 734; Milton, Jr., *et al.,* v. Marianna, 107 Fla. 251, 144 Sou. 400; City of St. Petersburg v. United Mutual Life Insurance Co., 120 Fla. 307, 162 Sou. 871. In the latter case we said:

"Courts are created to do justice and equity between litigants. An aggrieved party resorting to the courts to settle his controversy has a right to select the forum through which he can secure full, adequate, and complete relief. He is not required to invoke the aid of a forum that will give an inadequate remedy and at the same time afford his adversary the best means to 'back and fill' and in every other way halt the progress and effect of the remedy."

We hold that in cases of this sort the complainant may have relief if it be that relief is available at all in a court of equity. It will be observed that the property assessed is that sort of property defined in Sec. 1041 (3) C. G. L. Permanent Supplement, having been enacted in Chapter

15789, Acts of 1931. Section 12 of the 1931 Act, *supra,* which is brought forward as Section 1041 (11) C. G. L. Permanent Supplement, provides as follows:

"Annual tax levy on intangible personal property.—There is hereby annually levied and assessed on all Class A intangible personal property to be apportioned to the State for state purposes, a tax of two mills on the dollar of the taxable value of such Class A intangible personal property, to be assessed and collected as other taxes are assessed and collected for State purposes, and to be paid into the general revenue fund of the State of Florida." as to Cass A intangible personal property.

So the statute constitutes a levy by the legislature of the assessment of 2 mills on all Class A property.

This statute must be read in *pari materia* with Sec. 548 title 12 U. S. C. A. Sub-section 2 of Section 548, *supra,* is as follows:

"The shares of any national banking association owned by non-residents of any State, shall be taxed by the taxing district or by the State where the association is located and not elsewhere; and such association shall make return of such shares and pay the tax thereon as agent of such non-resident shareholders."

When read together the two statutes provide that a levy is made of a tax of 2 mills on the dollar. on the taxable value of Class A intangible personal property and that the same is to be assessed and collected as other taxes are assessed and collected and that shares of any national banking association owned by non-residents of Florida shall be taxed by the taxing district or by the State where the association is located and that such association shall make return of such shares and pay the tax thereon as agent of such non-resident shareholders.

The bill of complaint shows that the Tax Assessor of

Duval County transmitted to the appellant at each taxing period involved the necessary blanks upon which it was required by law to make return and that the appellant failed and refused to make any return showing the number of shares held by non-residents, the number of shares held by each of such non-residents, or the place of·residence of such non-resident shareholders; and, in effect, shows that thereupon the tax collector proceeded to assess the tax on the aggregate shares of stock owned by non-residents and assessed the same against the Bank in 1934 as agent for its non-resident stockholders; in 1935 against the Bank for its non-resident stockholders; in 1936 against the Bank for its non-resident stockholders and in 1937 against the Bank as agent for its non-resident stockholders.

We hold that the omission of the words "as agent" in the assessments of 1935 and 1936 was of no material consequence because each assessment shows that it was made against the Bank for its non-resident stockholders and the Federal statute provides that the Bank shall make return of such shares and pay the tax thereon as agent for its non-resident stockholders.

The statute required the Bank to make the return which it did not make. If it had made the return, that return should have shown the number of shares held by each non-resident stockholder, the taxable value thereof and the name and address of each stockholder, and with this detailed information, it would have become the duty of the Tax Assessor to assess the taxes in accordance with the information shown by the return. But, when the Bank failed and refused to make the return, then the Assessor was authorized to assess the intangible property according to his information and best judgment.

The appellant, having failed and refused to make the return required as a basis for the assessment, could not com-

plain that the Tax Assessor did not make the assessment in as full detail as it might have been made if the appellant had performed its duty in that regard.

These statements, of course, are based on what appears in the second amended bill of complaint, as such allegations are the allegations on which appellant finally stood.

In the brief for appellee it is stated that different allegations were made in the original bill of complaint as to the returns made to the Tax Assessor for the year 1934. This is true, but is of no consequence here as such contrary allegation are controverted by the allegations of the second amended bill.

In the case of Tappan, Collector, v. Merchants' National Bank, 86 U. S. 490, 22 L. Ed. 189, the Supreme Court of the United States said:

"The power of taxation by any State is limited to persons, property or business within its jurisdiction. *State Tax* on *Foreign-held Bonds* (*R. R. Co. v. Pag.*), 15 Wall. 319 (82 U. S. XXI 186). Personal property, in the absence of any law to the contrary, follows the person of the owner and has its *situs* at his domicil. But, for the purposes of taxation, it may be separated from him, and he may be taxed on its account at the place where it is actually located. These are familiar principles, and have been often acted upon in this Court and in the courts of Illinois. If the state has actual jurisdiction of the person of the owner, it operates directly upon him. If he is absent and it has jurisdiction of his property, it operates upon him through his property.

"Shares of stock in national banks are personal property. They are made so in express terms by the Act of Congress under which such banks are organized. 13 Stat. at L. 102 Sec. 12. They are a species of personal property which is in one sense, intangible and incorporeal, but the law which creates them may separate them from the person of their

owner for the purposes of taxation and give them a situs of their own. This had been done. By Section 41 of the National Banking Act, it is in effect provided that all shares in such banks held by any person or body corporate, may be included in the valuation of the personal property of such person or corporation in the assessment of taxes imposed under state authority, at the place where the bank is located and not elsewhere. 13 Stat. at L. 112. This is a law of the property. Every owner takes the property subject to this power of taxation under state authority, and every non-resident by becoming an owner, voluntarily submits himself to the jurisdiction of the State in which the Bank is established for all the purposes of taxation on account of his ownership. His money invested in the shares is withdrawn from taxation under the authority of the State in which he resides and submitted to the taxing power of the State where, in contemplation of the law, his investment is located. The State, therefore, within which a national bank is situated, has jurisdiction, for the purposes of taxation, of all the shareholders of the bank, both resident and non-resident, and of all its shares, and may legislate accordingly."

And, again in that opinion, it is said:

"A share of bank stock may be in itself intangible, but it represents that which is tangible. It represents money or property invested in the capital stock of the bank. That capital is employed in business by the Bank and the business is very likely carried on at a place other than the residence of some of the shareholders. The shareholder is protected in his person by the government at the place where he resides; but his property in this stock is protected at the place where the bank transacts its business. If he were a partner in a private bank doing business at the same place, he might be taxed there on account of his interest in the partnership. It is not easy to see why, upon the same

principle, he may not be taxed there on account of his stock in an incorporated bank. His business is there as much in the one case is in the other. He requires for it the protection of the government there, and it seems reasonable that he should be compelled to contribute there to the expenses of maintaining that government. It certainly cannot be an abuse of legislative discretion to require him to do so. If it is not, the General Assembly can rightfully locate his shares there for the purpose of taxation."

The contention that the State has not levied the tax on National Bank stock belonging to non-resident stockholders is not tenable because the Federal Act, *supra,* has provided that shares of such bank stock owned by non-residents shall be taxed by the State in which the Bank is located and the State legislative Act has annually levied and assessed *on all* Class A intangible personal property the tax here involved.

The Federal law made that sort of intangible personal property assessable in the State where the bank is located. The State legislative Act levied and assessed the tax against all such taxable property. This included such property of both residents and non-residents.

It is contended by the appellant that it could not now be reimbursed if it pays the tax for the several years as assessed, because many shares of stock have been transferred to other than those who owned the stock at the time of the assessment. If this is true, that condition has arisen through no fault of the taxing authorities, but because the Bank failed to do its duty and to protect itself at the time when the assessment was made. Therefore, the Bank is not in position to complain of what has been occasioned by its own wrong.

The Federal Statute, *supra,* creates the status of principal and agent between the Bank and its stockholders in this regard and authorizes the Bank to pay the tax as agent for

its stockholders. Whether or not the Bank requires. its stockholders to reimburse it for the tax which it is required to pay is a matter between the Bank as agent and the stockholders as principal, but, we think, as a practical matter, the Bank will find a way to reimbursement, unless it be in some case where, by its own negligence, it has allowed the transfer of stock on its books without protecting itself as to reimbursement of taxes which it is required under the law to pay as agent for the stockholders.

The order appealed from was without error and, is, therefore, affirmed.

So ordered.

Affirmed.

ELLIS, C. J., and WHITFIELD, BROWN and CHAPMAN, J. J., concur.

## ON REHEARING.

PER CURIAM.—Counsel for Appellant having filed a petition for rehearing in the above styled cause and the Court having thereupon allowed and heard a reargument of the cause by Counsel for the respective parties, it is now ordered and adjudged by the Court that the judgment of affirmance entered in this cause by the Court on August 2, 1938, be and it is hereby reaffirmed and that the judgment of the Circuit Court herein be and it is hereby affirmed.

TERRELL, C. J., and WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.

THOMAS, J., not participating, as this case was submitted before he became a member of the Court.