76 So.2d 494 (1954)
JEFFERSON ex rel.
v.
SWEAT.
Supreme Court of Florida. En Banc.
July 27, 1954.
On Rehearing December 7, 1954.
*496 M.H. Myerson and Walter G. Arnold, Jacksonville, for appellant.
Richard W. Ervin, Atty. Gen., Mark R. Hawes, Asst. Atty. Gen., and William A. Hallowes, III, Jacksonville, for appellee.
TERRELL, Justice.
August 27, 1953 appellant was arrested in Duval County with a Federal wagering stamp which he admitted to be his property and that he purchased it in July 1953. He was carried before a committing magistrate where a warrant was issued charging him with various offenses, among which was that "on diverse days between the 31st of July and the 27th of August 1953 in Duval County, Florida, with being a common gambler and, therefore, a vagrant, contrary to the provisions of Section 856.02, Florida Statutes 1951 [F.S.A.]." Evidence was taken by the magistrate and appellant was bound over for trial by the Criminal Court of Record, Duval County. Appearance bond was fixed at $500.
Application was immediately made to the Circuit Court for habeas corpus, the writ was issued to which a proper return was made, copy of the warrant and commitment being attached to the return. There was an answer to the return which charged that appellant was illegally detained of his liberty and that Chapter 28057, Acts of 1953, was unconstitutional and void. At the hearing before the Circuit Court the validity of Chapter 28057 was upheld and appellant was remanded to the custody of the sheriff. We are confronted with an appeal from the order of remand.
Counsel urge six questions for adjudication but in our view the only question with which we are concerned is the constitutional validity vel non of Chapter 28057, Acts of 1953.
Sections (1) and (2) of Chapter 28057 are the only portions of the act that are involved in this case. Section (3) has to do with "proof" at the trial which has not taken place, was not before the trial court and will not be discussed at this time. Sections (1) and (2) are as follows:
"1. The holding, owning, having in possession of, or paying the tax for a wagering occupational tax stamp issued by the Internal Revenue authorities of the United States shall be held in all the courts of this state as prima facie evidence against the person holding such stamp in any prosecution of such person for violation of the Gambling Laws of this state.
"2. In cases where the proper prosecuting officers shall produce said stamp or certified copy, the Grand Jury may indict the holder of such stamp or the proper prosecuting officer may file information against the holder of such stamp without further proof, charging such holder with the violation of the Florida Gambling Laws."
Internal Revenue Code, Section 3290, 26 U.S.C.A., provides for the issuance of a special federal wagering stamp and Section 3291 requires the purchaser's name and his business or office address if he has one and his residence address. Section 3297 provides that the payment of any tax imposed under the act "shall not exempt any person from any penalty provided by a law of the United States or of any State for engaging in the same activity, nor shall the payment of any such tax prohibit any State from placing a tax on the same activity for State or other purposes." In this connection it is apposite *497 to point out that the federal wagering stamp and the 10 per cent excise tax which follows are limited to bookmaking and lotteries for profit. As to Florida, the stamp is required for the conducting of bookmaking and lottery operations contrary to the statutes of this State.
Chapter 28057 was actuated by the Federal law authorizing the wagering stamp. Chapter 28057 was enacted at the 1953 session of the legislature and the federal wagering stamp law became effective November 1, 1951. This Court is committed to the doctrine that the State statute and the Federal statute should be read in pari materia. Atlantic Nat. Bank of Jacksonville v. Simpson, 136 Fla. 809, 188 So. 636. The objective of Chapter 28057, is that it makes the holding, owning, having in possession of, or paying the tax for a federal wagering occupational stamp prima facie evidence of violating the gambling laws of this State. When the stamp is produced it authorizes indictment by the grand jury or the proper prosecuting officer to file an information charging the holder with violating the gambling laws.
There is no provision of our State Constitution banning legislation of this character, so in civil and criminal proceedings the legislature is free to enact that one fact or set of facts may be presumptive or prima facie evidence of another. Such power is generally conceded. The extent to which the legislature may go in its exercise has provoked a great multitude of decisions. The general rule is that there must be a rational connection between the fact proved and the ultimate fact presumed so that the inference of one from proof of the other is not unreasonable and arbitrary. As long as the legislature leaves the accused a fair opportunity to make his defense in rebuttal and submit all facts to the jury, presumptions and rules of evidence so defined will be upheld. Jones Commentaries of Evidence (2nd Ed.) Vol. 2, Sec. 573, page 1060; Wooten v. State, 24 Fla. 335, 5 So. 39, 1 L.R.A. 819; Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519; Shelton v. Coleman, Sheriff, 136 Fla. 625, 187 So. 266; and many others.
There are of course limitations to this rule of evidence under the due process clause. The fact or concurrence of facts which raise the presumption and shift the burden of proof, must have a fair relation to or material connection with the fact as to which the presumption is raised. In view of the limited purpose for which a Federal gambling stamp is secured, we cannot say that the legislature was arbitrary and unreasonable in providing that it be prima facie evidence of violating the law against bookmaking and lotteries. A gambling stamp certainly has a reasonable relation to gambling and if the holder did in fact secure it for framing to adorn his office or hang in the drawing room beside grandpa's picture or for other laudable purposes, he is at liberty to prove it and to remove the presumption that he secured it for gambling purposes.
On the other hand, if the legislature should enact that any woman caught smoking cigarettes in a public place after sundown would be prima facie guilty of selling moonshine if charged within 30 days, or any man caught wearing socks and tie to match at the family clan picnic would be prima facie guilty of cow stealing if charged within six months, any such act or acts would be stricken down because there is no rational connection between selling moonshine and smoking cigarettes, or cow stealing and wearing socks and tie to match.
As was settled by this court in Goode v. State, 50 Fla. 45, 39 So. 461: In a criminal case the establishment of a prima facie case does not take away from the defendant the presumption of innocence, but leaves that presumption to operate in connection with, or in aid of, any proofs offered by him or arising out of the evidence to rebut or impair the prima facie case made by the State. A circumstance aided by that presumption may so far rebut or impair the prima facie case *498 as to render a conviction upon it improper. Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528; Ogletree v. State, 28 Ala. 693. Although by statute certain facts are made presumptive evidence against the defendant in a criminal case, if he denies them and adduces evidence in rebuttal, the jury must be satisfied of his guilt beyond a reasonable doubt. State v. Rogers, 119 N.C. 793, 26 S.E. 142.
The decisions are legion which hold that within rational bounds the burden of proof may be shifted from the State to the defendant. The shift arises when the State proves enough to make it equitable for defendant to take the lead and rebut or explain what the State has proven. Such balancing of convenience or shifting the burden may aid the State and not work a hardship on defendant. Morrison v. California, 291 U.S. 82, 54 S.Ct. 28, 78 L.Ed. 664. The purchaser of a federal wagering stamp understands his motives better than any one else and if he is not engaged in bookmaking or lottery operations it would work no hardship on him to tell why he secured it.
Little need be said in response to appellant's charge that Chapter 28057, Acts of 1953, is too broad and general and covers too many offenses. We do not think it contemplates any more than Section 856.02, F.S. 1951, F.S.A., which includes common gamblers and vagrants which have been held to be synonymous with professional gamblers. Bookmakers and lottery operators are the only class required to secure a federal wagering stamp but all classes of gamblers and vagrants are comprehended by Section 856.02, F.S. 1951, F.S.A.
It is accordingly our view that Sections (1) and (2), Chapter 28057, Acts of 1953, are ample to withstand the assault on them based on constitutional grounds. For this and other reasons stated in the opinion, we think the possession of a gambling stamp constituted probable cause to hold petitioner under a detention warrant. No trial has taken place so the question of whether or not the possession of a gambling stamp, standing alone, absent evidence of corpus delicti being sufficient to convict, is not presented nor decided.
Affirmed.
ROBERTS, C.J., HOBSON and DREW, JJ., and EATON, Associate Justice, concur.
THOMAS and MATHEWS, JJ., dissent.

On Rehearing Granted.
MATHEWS, Justice.
This is an appeal from the final judgment in a habeas corpus proceeding.
Section 1 of Chapter 28057, Laws of Florida 1953, is as follows:
"The holding, owning, having in possession of, or paying the tax for a wagering occupational tax stamp issued by the Internal Revenue authorities of the United States shall be held in all the courts of this state as prima facie evidence against the person holding such stamp in any prosecution of such person for violation of the Gambling Laws of this state." (Emphasis supplied.)
A Justice of the Peace is a constitutional judicial officer. Under F.S. Section 901.01, F.S.A. every judicial officer of the state from Justice of the Peace to a Justice of the Supreme Court is a Committing Magistrate.
The defendant-appellant was arrested and carried before a Committing Magistrate, who was a Justice of the Peace. A trial was had before the Magistrate to determine whether or not there was probable cause to believe that the appellant had committed a crime and therefore to hold and bind him over under a detention warrant. The difference between a trial before a Committing Magistrate and a trial before a jury in the Criminal Court of Record is that the trial before the Committing Magistrate is to determine if there *499 is a probable cause, and the trial before a jury in the Criminal Court is to determine whether or not the accused is guilty as charged. A trial before a Committing Magistrate may require a different degree of evidence than that before a Criminal Court of Record, but it is a trial nevertheless, and even before a Committing Magistrate there must be some evidence of corpus delicti. A person cannot be a common gambler or a bookmaker or a lottery operator unless there is evidence of some kind that there has been gambling in the community or bookmaking or lottery operations.
There was no evidence, direct or indirect, of any gambling of any kind in the community. There was no evidence of bookmaking or lottery operations. The only evidence before the Justice of the Peace was the Federal gambling stamp. On that evidence, and that alone, the detention warrant was issued and appellant was deprived of his liberty.
In the habeas corpus proceeding before the Circuit Judge the identical evidence which was before the Justice of the Peace was before the Circuit Judge, and nothing more.
If it be true that the Gambling Stamp Act, 26 U.S.C.A. § 3285 et seq., attempts to make the possession of a gambling stamp prima facie evidence of the violation of the gambling laws of the state by the possessor of the stamp, then there must first be some evidence that there has been a violation of the gambling laws. The mere possession of the stamp cannot be prima facie evidence that the appellant has been guilty of a crime when there is no evidence of any kind that a crime has been committed. It is well established that the basis of presumption must be a fact and that one presumption cannot be the basis of another presumption. Wagner v. United States, 8 cir., 8 F.2d 581. The fact that a crime has been committed, or corpus delicti, cannot be established by a presumption.
Even before a confession or admission of guilt can be introduced in evidence there must be some proof that the crime charged has been committed. Adams v. State, 153 Fla. 68, 13 So.2d 610. In a charge for arson there must be some evidence of a fire in order to convict. Smith v. State, 135 Fla. 835, 186 So. 203. In Hulst v. State, 123 Fla. 315, 166 So. 828, which was a homicide case, we held that there must be evidence of the death of a person in order to convict. In homicide cases it is essential that the death of a person be established or that there be some evidence of the death of a person before there can be any probable cause. Deiterle v. State, 101 Fla. 79, 134 So. 42. With reference to larceny there can be no probable cause unless there is some evidence that property has been lost by someone or has disappeared. Cross v. State, 96 Fla. 768, 119 So. 380.
The fact that a man possessed a pistol would not be prima facie evidence of murder unless the death of a human being is first established. The possession of saws, hammers and axes could not be made a presumption that a burglary had been committed unless there was first evidence which established the crime. The possession of goods unaccounted for could not be evidence of a crime unless a theft was proven. No circumstance could be the evidence of arson unless a fire was first established.
It may be, that if there was some evidence of gambling or of a specific violation of the gambling laws of the state the possession of a gambling stamp would be prima facie evidence that the possessor of the stamp was guilty, but there can be no prima facie evidence that he was guilty unless there was evidence that such a crime had been committed.
In the case of Ex parte Fortune, 126 Fla. 539, 171 So. 310, 311, the late Chief Justice Fred H. Davis issued a writ of habeas corpus returnable before himself as a Committing Magistrate to determine the probable cause for detention of Mrs. Jan I. Fortune. He quoted Section 8318, C.G.L., section 6024, R.G.S., which is now F.S. Section 901.01, F.S.A., and also Section 5, Article V, of the State Constitution, F.S.A. *500 Section 5, Article V, State Constitution, vests in each Justice of the Supreme Court the power to issue writs of habeas corpus. Acting upon the power cited the writ was issued. The criminal warrant under which Mrs. Fortune was held recited that she was violating the laws of the state in that she drove an automobile at a rate of speed greater than is reasonable and proper, and without regard to the width, traffic, and use of the highway. Mrs. Fortune had been arrested under that warrant in Leon County and was held in custody at the time and until her injuries permitted her to be taken back to Taylor County. The evidence taken before Justice Davis was then recited at some length. He held that there was a complete lack of evidence of reckless speed on the part of the driver and that reckless speed was the gist of the criminal charge made in the warrant. Justice Davis then found that the prisoner should be discharged from custody for lack of any showing for probable cause for her detention, and said:
"A judicial officer sitting as committing magistrate should not hold for bail and subsequent trial of a person accused of a criminal offense laid in an affidavit filed against him where, upon a challenge duly made by appropriate legal procedure of the existence of probable evidentiary cause for holding the accused for trial on the accusation, it is affirmatively made to appear that if a trial were duly had of the cause, the trial judge would be compelled to direct a verdict of acquittal as a matter of law on the evidentiary showing appearing to be relied upon as constituting probable cause for further holding under section 8320 C.G.L., section 6026 R.G.S.; section 8333 C.G.L., section 6036 R.G.S."
Upon the evidence before the Committing Magistrate in this case, which was the same as the evidence before the Circuit Judge, the prisoner should be discharged. Under the evidence shown by this record and with no evidence of any kind whatsoever that the gambling laws of the state had been violated, it would be the duty of a trial judge to direct a verdict of acquittal as a matter of law. Ex parte Fortune, supra. The showing made completely failed to show any evidence of a corpus delicti and, therefore, probable cause for holding the accused.
Chapter 28057, Laws of Florida 1953, attempts to make the holding, owning or having in possession of a Federal wagering occupational tax stamp prima facie evidence of the violation of the Florida laws against gambling. It does not refer particularly to any gambling law but refers to "the Gambling Laws of this state". The gambling laws of this State are covered by F.S. Chapter 849, F.S.A. The appellant attacks the constitutional validity of Sections 1, 2 and 3 of the Act, alleging that they deprive him of his liberty without due process of law and deny him equal protection of the laws.
Section 2 provides that where prosecuting officers produce said stamp the Grand Jury may indict or the prosecuting officer may file an information against the holder "without further proof, charging such holder with the violation of the Florida Gambling Laws". This is not a proceeding before the Grand Jury, nor a proceeding on an information.
Section 3 is with reference to the actual trial to determine the guilt or innocence of the accused and provides that the stamp shall be sufficient evidence, without explanation, "to convict of violation of the Gambling Laws". This proceeding does not involve a trial to determine the guilt or innocence of the accused.
The appellant was carried before a Justice of the Peace and a warrant was issued against him. He was then tried before such Justice of the Peace in order to determine whether or not there was sufficient evidence to believe that probable cause existed to justify a warrant of commitment. This question of probable cause cannot be determined by the Justice of the Peace without a trial. This is entirely different from a trial before a jury to determine *501 the guilt or innocence of the accused and may require a different degree of proof.
Section 1 provides that the holding, owning or having in possession of such a stamp shall be held "in all the courts of this state as prima facie evidence against the person holding such stamp in any prosecution of such person for violation of the Gambling Laws of this state". A justice of the peace court is one of the constitutional courts of this state. The Circuit Judge in a habeas corpus proceeding is one of the constitutional courts of this state. This was a proceeding for the prosecution of a person for violation of the Gambling Laws of the state. Therefore, Section 1 of the Act does apply and as said section, construed in connection with Section 3, attempts to make the mere possession of the stamp prima facie evidence of the violation of the gambling laws and sufficient evidence to convict without any proof whatsoever that any gambling law has been violated, it is unconstitutional, null and void. Evidence to "convict" is certainly sufficient to establish "probable cause".
If a person desires to test the validity of his detention under a detention warrant issued by a Committing Magistrate, habeas corpus to this Court or to the Circuit Court is the proper remedy. The case of Ex parte Fortune, supra, was a habeas corpus proceeding before a Justice of this Court, and Rodriguez v. Culbreath, Fla., 66 So.2d 58, was a habeas corpus proceeding directly to this Court. In each case jurisdiction was exercised and the prisoner discharged because there was no probable cause. See also State ex rel. Price v. Stone, 128 Fla. 637, 175 So. 229.
In the case of McLeod v. Chase, 95 Fla. 736a, 116 So. 858, 859, the appellant was committed by a Justice of the Peace and obtained a writ of habeas corpus from the Circuit Court of Dade County. The Circuit Judge declined to discharge the appellant because, in his opinion, the case of White v. Penton, 92 Fla. 837, 110 So. 533, held that the writ of habeas corpus used to test the sufficiency of the evidence upon which a charge had been based was not sanctioned by the Court. The appellant was remanded to the custody of the sheriff. The appellant then appealed to this Court and this Court held:
"The writ of habeas corpus was designed as a speedy method affording a judicial inquiry into the cause of an alleged unlawful actual deprivation of personal liberty. See Porter v. Porter, 60 Fla. 407, 53 So. 546, Ann.Cas. 1912C, 867, note.
"An inquiry in such proceedings goes to the legality of the alleged detention of the prisoner. Crooms v. Schad, 51 Fla. 168, 40 So. 497.
"Since a conviction under a void statute is void and a person held under a judgment would be discharged, see Ex parte Knight, 52 Fla. 144, 41 So. 786, 120 Am.St.Rep. 191; Harper v. Galloway, 58 Fla. 255, 51 So. 226, 26 L.R.A.,N.S., 794, note, 19 Ann.Cas. 235, a person held in unlawful confinement under a state of facts which constitutes no offense under the law will be discharged on writ of habeas corpus. The case of White v. Penton, supra, does not apply.
"The relator should be discharged because nothing may be accomplished by a dismissal of the writ of error."
In this case the writ of habeas corpus to the Circuit Court and an appeal by the appellant from the order of the Circuit Court is the proper method for determining whether or not probable cause exists to restrain the appellant of his liberty and cause him to be tried at some indefinite time in the future on the question of his guilt or innocence.
There is an interesting discussion on the duty of the Committing Magistrate and the proper procedure before him in People v. Schuber, 71 Cal. App.2d 773, 163 P.2d 498. In that case it was clearly held that there must be competent proof independent of admissions, confessions and presumptions *502 that a public offense had been committed in order to show probable cause. It was pointed out that a preliminary examination was less formal than a trial and that less evidence may be required to hold an accused for trial, but the fact that the crime has been committed, or the corpus delicti, must be established.
F.S. Section 902.13, F.S.A., reads as follows:
"After hearing the evidence, if it appears either that an offense has not been committed or that, if committed, there is not probable cause to believe the defendant guilty thereof, the magistrate shall order that he be discharged."
There was a complete absence of any evidence of any kind that a crime had been committed and, therefore, there could be no probable cause that the accused had committed such crime. Ex parte Fortune, supra.
It is difficult to understand how the mere possession of a stamp for bookmaking and lottery operations can be presumptive evidence of probable cause that a person is guilty of being a vagrant because he is a common gambler, or prima facie evidence that he has violated the gambling laws, when there is no evidence of any kind of any gambling, or that the gambling laws of the state have been violated, in the community in which appellant resides.
Chapter 28057, Acts of 1953, as applied in this case deprives the appellant of his liberty without due process of law and denies to him the equal protection of the law in the particulars herein pointed out.
This case be, and the same is, hereby reversed, with directions that the prisoner be discharged.
THOMAS, HOBSON and DREW, JJ., concur.
EATON, Associate Justice, concurs specially with opinion.
ROBERTS, C.J., and TERRELL, J., dissent
EATON, Associate Justice (concurring specially).
The record shows that a "statutory examination" or preliminary hearing was held before the committing magistrate, purpose of such examination being to determine: (1) if the crime described in the affidavit and warrant had, in fact, been committed; and (2) if so, to determine if there existed probable cause to believe that the person named as defendant in the affidavit and warrant had committed the offense named therein.
In McLeod v. Chase, 95 Fla. 736a, 116 So. 858, 860, a concurring opinion by the late Mr. Justice Whitfield said:
"The Constitution of this state provides for the election of justices of the peace and defines their jurisdiction as trial courts, and confers upon each justice of the peace `power to issue process for the arrest of all persons charged with felonies and misdemeanors not within his jurisdiction to try, and make the same returnable before himself or the county judge for examination, discharge, commitment or bail of the accused.' * * *
"The statutory `examination' contemplates a consideration of all pertinent evidence adduced. If there is substantial legal evidence, direct or circumstantial, of all the elements that are essential to the offense charged and by such evidence the magistrate `shall be satisfied that there is good ground to hold a person accused to bail,' the magistrate may require bail or commit to jail in default thereof, and his action is within his jurisdiction, whether his decision is correct or erroneous.
"On habeas corpus taken by one committed by a committing magistrate, the court may examine into the sufficiency of the complaint to charge a criminal offense, and may consider the *503 evidence that was adduced before the magistrate to determine whether there is substantial legal evidence of all the ultimate facts that are essential to be proven at the trial to convict the accused of the offense charged."
In Ex parte Fortune, 126 Fla. 539, 171 So. 310, 311, the late Mr. Justice Davis prescribed the test to be followed by a committing magistrate in his determination of whether or not there exists probable cause, when he wrote:
"A judicial officer sitting as committing magistrate should not hold for bail and subsequent trial of a person accused of a criminal offense [where] * * * it is affirmatively made to appear that if a trial were duly had of the cause, the trial judge would be compelled to direct a verdict of acquittal as a matter of law on the evidentiary showing appearing to be relied upon as constituting probable cause."
While a preliminary hearing before a justice of the peace is not a trial for the purpose of convicting an accused, Section 3 of Chapter 28057, Acts of 1953, must be read in pari materia with F.S. Section 902.13, F.S.A. relating to preliminary hearings before committing magistrates and requiring the discharge of the accused in the absence of evidence indicating probable cause of the commission of an offense and the guilt of the accused. For a justice of the peace in this state to validly hold an accused person for bail and subsequent trial, the legal sufficiency of the evidence which will be produced against that person at the time of subsequent trial must be weighed and determined as of the time of preliminary hearing. See F.S. Section 902.13, F.S.A.
At the hearing before the committing magistrate and under the provisions of Chapter 28057, Acts of 1953, the state offered in evidence the wagering occupational tax stamp, and over the objection of the accused raising the validity of said Act, it was received in evidence against the accused and the accused was held for bail. By stipulation a transcript of the proceedings before the justice of the peace was made a part of the record in the habeas corpus hearing. The wagering occupational tax stamp was offered into evidence at the habeas corpus hearing. The petitioner objected to its admission into evidence on several grounds, including the ground that no corpus delicti had been proved and because Chapter 28057, Acts of 1953, was unconstitutional  and over these objections of the petitioner, said wagering occupational tax stamp was received in evidence. It clearly appears that the constitutionality of all sections of the Act was raised and necessarily considered below. For this court now to determine the question of the legality of the petitioner's restraint following the preliminary hearing it must, for the reasons stated herein, consider the constitutionality of Section (3) of the Act, as well as Sections (1) and (2). In our original opinion we overlooked these facts.
Sections (1) and (2) of the Florida statute here under attack set forth that holding, owning, or having in possession a wagering occupational tax stamp issued by the Federal Internal Revenue authorities shall be held in all courts of this state as prima facie evidence against the person holding such stamp, and that the proper prosecuting officer may inform against the holder or possessor of such stamp without further proof, and that a Grand Jury may indict the holder of such stamp without further proof. Those sections of the statute make such evidence competent and sufficient to establish an unlawful intent and to raise a presumption against an accused person unless rebutted or the contrary shown; yet they do not make it obligatory upon a jury to convict after the presentation of such proof. It is for the jury to determine whether or not such evidence is sufficient to overcome the presumption of innocence of a defendant and to establish his guilt beyond a reasonable doubt when all the evidence has been considered, including the presumption that might arise against the accused from such prima facie evidence.
*504 Similar "prima facie evidence" provisions in criminal statutes have consistently been held not to overturn the doctrine of reasonable doubt in criminal cases. Our courts have held that the term "prima facie evidence" merely establishes a rule of evidence and does not remove from the state the obligation to prove the defendant's guilt beyond a reasonable doubt.
The legislature, under our State Constitution, is free to enact that one fact or set of facts may be presumptive or prima facie evidence of another. The general rule is that there must be a rational connection between the fact proved and the ultimate fact presumed, so that the inference of one from proof of the other is not unreasonable and arbitrary. Possession of a gambling stamp has a reasonable relation to the violation of the gambling laws, and there is a rational connection between the two, so I agree that the legislature has been neither arbitrary nor unreasonable in providing that possession of a gambling stamp be prima facie evidence against the person holding such stamp in any prosecution for violation of the gambling laws of this state. "Prima facie evidence" provisions such as those found in Sections (1) and (2) of this Act do not attach the presumption of guilt to a given circumstance, nor do they require an accused to overcome the presumption thereby raised in order to be entitled to an acquittal at the time of subsequent trial. What they do say is that the fact of possession is evidence of guilt, but the jury might still entertain a reasonable doubt of the defendant's participation in the crime. Such statutes may validly raise a presumption against an accused person if, in fact, the state can show that a crime has been committed.
It is my view, then, that Sections (1) and (2) of the statute under attack have withstood the assault made upon them on constitutional grounds, and I therefore concur, in that regard, in the original opinion.
But Section 3 of the statute, which must necessarily become operative at the time of preliminary hearing, collides head-on with Section 12 of the Declaration of Rights of our State Constitution. It deprives an accused of his liberty without due process of law, and it compels him, in a criminal case, to be a witness against himself.
Section 3 of the statute attempts to make it the law of this state that proof of the owning, holding or possession of a gambling stamp shall be sufficient evidence, without explanation, to convict of violation of the gambling laws. Thus, it attempts to make it obligatory upon a jury to convict after proof of the possession of the gambling stamp, unless the accused overcomes the presumption thereby raised. Such a provision does remove from the state the obligation to prove defendant's guilt beyond a reasonable doubt. The court, in the absence of a jury, or a jury following an instruction by the trial judge upon Section 3, would be obliged to convict an accused if he did not take the stand in his own defense.
Further, Section 3 attempts to eliminate the necessity of the state's proving that a crime has, in fact, been committed. It seeks to do more than raise a presumption. It seeks to establish corpus delicti. The fact that a particular crime has been committed cannot be presumed. Neither can it be legislated into existence.
Nowhere in the record in this matter is there evidence, direct or circumstantial, to establish that a crime was committed. No attempt to prove the corpus delicti was made, the appellee having relied throughout upon Chapter 28057, Acts of 1953.
Notwithstanding my concurrence in the original opinion that Sections (1) and (2) of the Act are constitutional, it is my opinion that the judgment should be reversed and the petitioner discharged.
TERRELL, Justice (dissenting).
I dissent for the reasons stated in my original opinion.
ROBERTS, C.J., concurs.