HENDRY, Judge.
Appellees, Elaine Ross, Sol M. Ross and Tanglewood Lake Estates, Inc., entered into a subdivision improvement agreement with Dade County, the performance of which was bonded by the appellant, Aetna Insurance Company. Appellees defaulted under the contract, whereupon Dade County, as plaintiff below, filed suit against appellant and appellees jointly. Dade County was granted judgment, and the claim was paid in full by Aetna, which in turn filed its cross-complaint for indemnity against ap-pellees. Appellees had executed a contract of indemnity and as security for the bond had deposited with Aetna a savings account passbook. This passbook was surrendered to the savings institution in return for face value upon default by appellees and rendition of judgment for Dade County. Aetna, by its cross-claim, sought a deficiency judgment representing the difference between the sum paid on the surety bond and the amount recouped through the cashing of the collateral security. Appellee defended on the basis that by pursuing the course of action with regard to the security without aid of judicial proceedings, Aetna had elected its remedy and was, hence, barred from maintaining its cross-claim against appel-lees. It was upon this basis that summary judgment was denied to appellant. However, the lower court granted summary final judgment in favor of the appellees, from which judgment Aetna now appeals.
Appellant contends that it was wholly justified in proceeding immediately to liquidate the asset held by it as security and in applying that sum against the obligations of appellees. As authority for so doing, Aetna relies upon the terms and conditions of a “collateral receipt” issued to Sol M. Ross as president of Tanglewood Lake Estates, Inc., at the time the passbook was delivered. The pertinent portion of that receipt reads as follows:
“The Company is hereby given FULL RIGHT, POWER AND AUTHORITY in connection with said bond and all other bonds, whether executed heretofore or hereafter on behalf of said Principal, (A) to apply said collateral, in whole or in part to the payment of all premiums due or that may become due and in reimbursement of all loss, costs, damages, charges and expenses of whatsoever kind or nature, including attorney’s fees, incurred or sustained by it and its co-sureties, if any, directly or indirectly by virtue of the execution of any such bonds or by virtue of any failure on the part of said Principal to comply with the terms and conditions of any agreement made in connection with any of such bonds; (B) to sell or realize upon said collateral, in whole or in part at its discretion, at public or private sale, with or without notice to the Depositor of the time and place of said sale and also with the right to purchase said collateral at said sale or sales, freed and discharged from any equity of redemption, and the Company shall not be liable for any loss of interest or dividends resulting from any such action; (C) at its option to cash, at any time, without regard to its having suffered damages, loss, expense or similar *46 charges, any and all checks, certificates of deposit, savings accounts and similar instruments or orders for the payment of money, and to hold the proceeds thereof under the terms of this agreement, and the company shall not be liable for any loss of interest or dividends resulting from such action.”
 More succinctly, appellant’s position is that the sale of pledged collateral security without aid of judicial process is not such action as will constitute an election of remedies. Stated in this narrower context, we find that appellant’s contention has merit. For a definition of the term “pledge”, we turn to the case of Pepper v. Beville, 100 Fla. 97, 129 So. 334 at page 337 (1930), wherein the opinion recites :
“Strictly speaking the term ‘collateral’, or ‘collateral security’, denotes a pledge of incorporeal personal property, such as stocks, bonds, choses in action, etc., while a ‘pledge’ may be defined as a deposit of corporeal personal property as security, with an express or implied power of sale upon default. This power of sale without resort to judicial proceedings is one of the features which distinguishes a pledge from a lien. Judge Story defined a pledge as ‘a bailment of personal property as a security for some debt or engagement.’ And Mr. Justice Willes held that the right to the property vests in the pledgee only so far as is necessary to secure the payment of the debt. The legal title and general ownership of pledged property^remains in the pledgor, while only a special property— for a special purpose. — passes to the pledgee, and this special property is not enlarged by the pledgor’s default in paying the debt secured at its maturity. The pledgee may detain the pledge until the debt is paid, or sell it, after default, but, subject to this power or special property right, the pledgor retains the legal title and general property right in the goods pledged. [Citations of authority omitted].”
There are, of course, other remedies available to the pledgee, such as suit upon the obligation or foreclosure pursuant to judicial proceedings, but these other remedies are by no means exclusive. See Fink v. Silvester, Fla.App. 1964, 166 So.2d 776. It is the peculiar feature of the pledge that it may provide, expressly or by implication, for the sale of collateral security without resort to judicial process. In light of the above, it would be a complete non sequitur to hold such a sale tantamount to an election between coexistent and inconsistent remedies. See Cooley v. Rahilly, Fla.App. 1967, 200 So.2d 258. Therefore, the judgment appealed is reversed and the cause remanded for further proceedings not inconsistent with this opinion.
Reversed and remanded.